No. 16,613.

CASS, MANAGER OF REVENUE *v.* DAMERON.
(244 P. [2d] 1082)

Decided May 12, 1952.   Rehearing denied June 2, 1952.

Mr. J. Glenn Donaldson, Mr. Abe L. Hoffman, Mr. Burton Crager, for plaintiff in error.

Mr. Theron Lamar Caudle, Assistant Attorney General, Mr. Ellis N. Slack, Mr. Berryman Green, Special Assistants, Mr. Max M. Bulkeley, United States Attorney, Mr. Henry E. Lutz, Assistant, for defendant in error.

*En Banc.*

Mr. Chief Justice Jackson delivered the opinion of the court.

The question presented in this case is whether, under section 574 of the Federal Soldiers' and Sailors' Civil Relief Act, Title 50, U.S.C.A., the personal tangible property of an officer in the Armed Forces of the United States, whose domicile is Louisiana, is subject to taxation by the City and County of Denver where it was located during the calendar year 1948 while the officer and his family resided in Denver and he was assigned to duty at the near-by Lowry Field Air Base.

The case arose when defendant in error, Dameron, after paying, under protest, taxes in the amount of $23.51 on a valuation of $460.00 to plaintiff in error, as manager of revenue and ex-officio treasurer of the City and County of Denver, sued to recover the amount paid. The facts are not in dispute. Major Dameron and his family resided in Denver all of the calendar year 1948, during which period he was assigned to Lowry Field Air Base, and the personal tangible property upon which the tax

was paid was located in their Denver apartment. This property was in the Colorado jurisdiction when it was listed, valued, assessed, when the lien attached, the levy applied and the tax became due and payable. There is no allegation or contention that a tax was paid in the state of plaintiff's domicile, Louisiana, or any other state, on the same property during that time. The trial court entered judgment in favor of plaintiff, and the treasurer of the City and County of Denver brings the cause here for review seeking a reversal of that judgment.

The pertinent provisions of the Soldiers' and Sailors' Civil Relief Act read as follows:

§ 574. "(1) For the purposes of taxation in respect of any person, or of his personal property, income, or gross income, by any State, Territory, possession, or political subdivision of any of the foregoing, or by the District of Columbia, such person *shall not be deemed* to have *lost* a residence or domicile in any State, Territory, possession, or political subdivision of any of the foregoing, or in the District of Columbia, *solely by reason of being absent* therefrom in compliance with military or naval orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, while, and *solely by reason of being, so absent. For the purposes of taxation in respect of the personal property,* income, or gross income of any such person by any State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, of which such person is *not* a resident or in which he is not domiciled, compensation for military or naval service shall not be deemed income for services performed within, or from sources within, such State, Territory, possession, political subdivision, or District, and *personal property shall not be deemed* to be located or present in or to have a situs for taxation in such State, Territory, possession, or political subdivision,

or district: *Provided,* That nothing contained in this section shall prevent taxation by any State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia in respect of *personal property used* in or arising from a trade or business *if it otherwise has jurisdiction.* This section shall be effective as of September 8, 1939, except that it shall not require the crediting or refunding of any tax paid prior to October 6, 1942.

" (2)  When used in this section, (a) the term 'personal property' shall include tangible and intangible property (including motor vehicles), and (b) *the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof: Provided, That the license, fee, or excise required by the State, Territory, possession, or District of Columbia of which the person is a resident or in which he is domiciled has been paid."* Italics supplied.

■  In the interpretation of a statute, a primary object is to determine the intention of the legislative body. The history of an act is often appropriate, and with that purpose counsel for Dameron attach to their brief, as Appendix B, the Senate Committee Report on Military Affairs respecting the 1944 amendment to the Soldiers' and Sailors' Civil Relief Act.  That report reads as follows:

"The Committee on Military Affairs, to whom was referred the bill, H.R. 4733, to amend section 514 of the Soldiers' and Sailors' Civil Relief Act, having considered the same, submit the following report thereon, with the recommendation that it do pass.

"The purpose of the proposed legislation is to clarify the intent of section 514 of the Soldiers' and Sailors' Civil Relief Act as added by section 17 of the act of October 6, 1942 (56 Stat. 769, 777). When that provision of law was added to the act to relieve persons in service from liability of *double taxation* by being moved from one State to another under orders, it was intended that it should ap-

ply to personal property taxes as well as to income taxes. As presently constituted, it primarily affects taxes in respect to income and other taxes based on residence or domicile, but it does not prevent the State of 'temporary residence' from taxing tangible personal property actually located in such State so long as the tax does not depend on residence · or domicile. A few States have taken the position that tangible personal property of military personnel who are only temporarily within their jurisdiction does not acquire a situs for taxation, but it has been held that section 514 of the act as now written does not affect the right of a State to assess personal-property taxes on property within its jurisdiction. The result has been that servicemen find themselves at times subjected to personal-property taxes on *the same property in more than one State during* the same calendar year by reason of being moved under orders.

"Your committee considers that the existing law pertaining to State taxation of the personal property of persons in military service present in the various States in compliance with military orders should be clarified; that the military personnel concerned *should not be subjected to multiple taxation of personal property* by the various States and should be given the same protection as to personal property taxes as is now provided in respect of income taxes." Italics supplied.

It would appear from the wording of this report that the main object of the 1944 amendment was the elimination of multiple taxation of military personnel.

Counsel for Dameron attach to their brief, as Appendix C, a list of the states of the Union, together with the state and local assessment dates for assessment of personal . property, showing the varying dates upon which personal property is assessed in those states. We believe that this only emphasizes the fact that the Congress was merely intending the elimination of multiple taxation through the possibility of the same property being taxed

in various states because of the owner being in several states during the course of the year.

There is nothing in the following letter from Henry L. Stimson, then Secretary of War, to the chairman of the committee of military affairs of the Senate, dated June 9, 1944, that alters this conclusion:

"The purpose of the proposed legislation is to prevent the multiple taxation of the personal property of military personnel by the various States, which it is understood was one of the purposes of section 514 of the Soldiers' and Sailors' Civil Relief Act as added by the act of October 6, 1942."

We feel confirmed in our position that the principal object of the amendment to the Soldiers' and Sailors' Civil Relief Act is to prevent the possibility of multiple taxation, after noting the following comment in the report of the House Military Affairs Committee referring to this same legislation:

"When the Soldiers' and Sailors' Civil Relief Act of 1940 was amended by the act of October 6, 1942, a provision was written into the act to *relieve persons* in the service from liability of *double taxation* by being moved from one State to another under orders. It was intended that this should apply to personal property taxes as well as income taxes. However, it has been held that under the wording of such amendement personal property taxes were not included. The result has been that servicemen find themselves at times subjected to personal property taxes in more than one State by reason of being moved under orders.

"The purpose of the present act is to correct this situation and to give to the servicemen the same protection as to personal property taxes that they now have as to income taxes."

It is to be observed that giving to servicemen the same protection respecting personal property taxes as is given in the case of income taxes in nowise operates as an

*exemption* from taxation—the protection hitherto afforded servicemen in respect to income taxes having the purpose of preventing their being subject to income taxes in more than one state of the Union during the same period of time. We believe it is significant that neither in the act itself, nor in the reports of the Congressional committees leading up to the enactment of the amendment, is there any reference to granting exemption from taxation.

The Treasurer of the City and County of Denver does not claim that plaintiff, by virtue of his sojourn in Colorado under military orders, has lost his domicile in Louisiana. There has been no claim that he should pay a Colorado income tax for which residents of Colorado are liable. He is, in accordance with the federal statute, still deemed to be a resident of Louisiana. As to his *intangible* personal property, there is no contention that its situs should be deemed to be other than that in the State of Louisiana. But in respect to the personal tangible property of plaintiff, which has had a physical situs in Colorado during the whole of the taxable period as a result of which it appears it had no physical situs in Louisiana and was not subject to taxation in that state, we are of the opinion that the presumption accorded by the federal statute, that the situs was the State of Louisiana, has been effectively rebutted by the record; and there being no evidence to show that the domiciliary State of Louisiana has taxed the property, Colorado, as the state of actual physical situs, is free to levy and collect the tax for the period in question. It is obvious that, Louisiana having collected no tax on the property, Colorado is the only other state that can tax it. To deny Colorado this right turns the federal statute into an exemption.

The basic fact in the instant case is that multiple taxation has not been shown to exist; that the only state in which taxation has occurred for the calendar year 1948 on the property in question is the State of Colorado.

There is nothing in the record to show that the taxing officials of the domiciliary State of Louisiana, or any other state of the Union, have undertaken to levy taxes or have in fact collected taxes on the personal tangible property involved in this case. The effect of the argument of counsel for Dameron is to reach a result whereby he would wholly escape taxation on his personal tangible property. We are confident that that was not the purpose of the statute.

■ Our use of the word "deemed" in the statute, as being the equivalent of "presumed," is not without support. In *Zimmerman v. Zimmerman*, 175 Ore. 585, 155 P. (2d) 293, the Oregon Supreme Court applied such a meaning to the word "deemed," and then continued as follows:

"We think it clear from the authorities above cited that the various constitutional provisions which state that no soldier shall be *deemed* to have acquired a residence in the state *in consequence of* or *by reason of* having been stationed within the same should be construed as if the word 'merely' were inserted immediately before words 'in consequence of' and that such consitutional provisions do not prevent the acquisition of domicile by a soldier under the rules of the common law as set forth in the Restatement of Conflict of Laws."

In the instant case it will be noted that there is no need of supplying a modifying adverb, such as the word "merely," used in the Oregon case, to bring out the true meaning. It already is present in the phrase, "solely by reason of being absent therefrom [his domicile]."

Thus the Oregon court held that there was a rebuttable presumption that the sojourning soldier did not acquire a residence; but that the contrary could be shown from facts other than his mere presence in Oregon under military orders.

■. So in the instant case we interpret the statute, as applied to the presented facts, as though it reads as fol-

lows: "For the purposes of taxation in respect of any person [Dameron], or of his personal property [household goods] * * * by any State, Territory * * * [City and County of Denver] such person [Dameron] shall not be deemed to have lost a residence or domicile in any State, * * * [Louisiana] solely by reason of being absent therefrom in compliance with military * * * orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State * * * [Colorado], while, and solely by reason of being so absent. For the purposes of taxation in respect of the personal property, * * * of any such person [Dameron] by any state, * * * [Colorado] of which such person is not a resident or in which he is not domiciled, * * * " his "personal property shall not be deemed to be located or present in or to have a situs for taxation in such state * * * [Colorado]" solely by reason of his being absent from Louisiana and stationed in Colorado in compliance with military orders." We have repeated the phrase, "solely by reason of his being absent from Louisiana and stationed in Colorado in compliance with military orders," because that is the sort of person the statute is describing when it refers, in the last sentence, to the personal property of any *such* person.

A serviceman's personal tangible property is not deemed to be located in Colorado *solely* by reason of its Colorado situs and of his being absent from his Louisiana domicile. There must be some additional factor if that presumption is to be upset. That something else, in the instant case, is the complete failure to show that the property has been taxed in the state of domicile. We believe the second paragraph of the amendment indicates the legislative intent that taxes in the state of domicile shall have been paid before the inferences of situs of personal tangible property can be brought into play. Thus sub-section B, having indicated that the term "taxation" shall include the additional items of licenses, fees or ex-

cises imposed in respect to motor vehicles or the use thereof, immediately makes it clear that those items must be paid before they can be included within that term.

Because of our views as to the scope and limitations of the Soldiers' and Sailors' Civil Relief Act as applied to the facts in this case, and also because of our views that the application of the act in the instant case does not conflict with the taxing statute of the City and County of Denver and the State of Colorado, it is not necessary that we consider the second question raised by counsel for the Treasurer of the City and County of Denver, namely: That the provision of the Soldiers' and Sailors' Civil Relief Act, here under discussion, is unconstitutional.

The judgment accordingly is reversed.