## DAMERON v. BRODHEAD, MANAGER OF REVENUE & EX-OFFICIO TREASURER OF THE CITY & COUNTY OF DENVER.

No. 302.   Argued February 4, 1953.—Decided April 6, 1953.

*Philip Elman* argued the cause for petitioner.   With him on the brief were *Solicitor General Cummings, Assistant Attorney General Lyon, Ellis N. Slack* and *Berryman Green.*

*Leonard M. Campbell* argued the cause for respondent. With him on the brief was *John C. Banks.*

MR. JUSTICE REED delivered the opinion of the Court.

The facts here are simple and undisputed.   Petitioner is a commissioned officer of the United States Air Force. He was assigned to duty at Lowry Field, near Denver, Colorado, in 1948 and, throughout that year, resided in

a privately rented apartment in that city. Respondent, acting Manager of Revenue and ex-officio Treasurer and Assessor of the City and County of Denver, assessed a tax of $23.51 on his personal property, mostly household goods in the apartment, which he valued at $460, by virtue of 4A Colorado Statutes Annotated (1935 ed.), c. 142.[1] Petitioner paid the tax under protest, and sued to recover. His complaint pleaded as a fact that he, "during the whole of the calendar year 1948, and for many years prior thereto, was, and at the present time is, a citizen and a resident of the State of Louisiana, domiciled in the Town of Port Allen, in the Parish of West Baton Rouge, in the State of Louisiana, and remains a domiciliary of that town, parish, and state, and a citizen and resident of said state, in which during all of the period of time pertinent hereto the plaintiff was and is a qualified voter." He claimed that § 514 of the Soldiers' and Sailors' Civil Relief Act, 54 Stat. 1186, as amended, 56 Stat. 777, 58 Stat. 722, 50 U. S. C. App. §§ 501, 574, therefore forbade imposition of the Colorado tax. Respondent moved to dismiss, argument was had and the trial court entered judgment for petitioner. The Colorado Supreme Court, on appeal, reversed. *Cass* v. *Dameron,* 125 Colo. 477, 244 P. 2d 1082. It held that the purpose of the statute was to prevent multiple taxation of military personnel, but that since Louisiana had not taxed petitioner's personal property, Colorado was free to do so. Our grant of certiorari rested on 28 U. S. C. § 1257 (3). 344 U. S. 891.

---

[1] This statute, in standard form, provides that "[a]ll personal property within this state on March first at twelve o'clock meridian in the then current year shall be listed and assessed," § 72, and that the taxes so assessed "shall be and remain a perpetual lien upon the property so levied upon," § 197 (a).

Section 514 of the Act was added, in large part, in 1942. It then provided essentially that:

"For the purposes of taxation in respect of any person, or of his property, income, or gross income, by any State, Territory, possession, or political subdivision of any of the foregoing, or by the District of Columbia, such person shall not be deemed to have lost a residence or domicile in any State, Territory, possession, or political subdivision of any of the foregoing, or in the District of Columbia, solely by reason of being absent therefrom in compliance with military or naval orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, while, and solely by reason of being, so absent."

The 1944 Amendment thereto, which is crucial here, first concerned personal property taxes. It stated:

"personal property shall not be deemed to be located or present in or to have a situs for taxation in such State, Territory, possession, or political subdivision, or district."

It also interpolated "personal" in the second line of § 514 (1). 58 Stat. 722.

Respondent's argument that the statute in this form cannot affect Colorado's attempt to tax petitioner is two-fold—either it does not apply or is unconstitutional.

The constitutionality of federal legislation exempting servicemen from the substantial burdens of seriate taxation by the states in which they may be required to be present by virtue of their service, cannot be doubted. Generally similar relief has often been accorded other types of federal operations or functions. And we have

upheld the validity of such enactments, even when they reach beyond the activities of federal agencies and corporations to private parties who have seen fit to contract to carry on functions of the Federal Government. *Carson* v. *Roane-Anderson Co.,* 342 U. S. 232, and cases cited; cf. *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 160–161.

Nor do we see any distinction between those cases and this. Surely, respondent may not rely on the fact that petitioner here is not a business contractor. He is not the less engaged in a function of the Federal Government merely because his relationship is not entirely economic. We have, in fact, generally recognized the especial burdens of required service with the armed forces in discussing the compensating benefits Congress provides. *Le Maistre* v. *Leffers,* 333 U. S. 1; *Boone* v. *Lightner,* 319 U. S. 561. Cf. *Board of Commissioners* v. *Seber,* 318 U. S. 705. Petitioner's duties are directly related to an activity which the Constitution delegated to the National Government, that "to declare War," U. S. Const., Art. I, § 8, cl. 11, and "to raise and support Armies." *Ibid.,* cl. 12. Since this is so, congressional exercise of a "necessary and proper" supplementary power such as this statute must be upheld. *Pittman* v. *Home Owners' Corp.,* 308 U. S. 21, 32–33; *Federal Land Bank* v. *Bismarck Co.,* 314 U. S. 95, 102–104. *Carson* v. *Roane-Anderson Co., supra,* at 234. What has been said in no way affects the reserved powers of the states to tax. For this statute merely states that the taxable domicile of servicemen shall not be changed by military assignments. This we think is within the federal power.

We turn, then, to the interpretation of the statute within the factual confines of this particular case. Respondent's theory here also has no merit. It is based on the statements of the legislative history that, for instance, the provision was "designed to prevent multiple State

taxation." H. R. Rep. No. 2198, 77th Cong., 2d Sess., p. 6.[2] The short answer to the argument that it therefore only applies where multiple taxation is a real possibility is that the plain words of the statute do not say so. In fact, they are much broader: "personal property shall not be deemed to be located or present in or to have a situs for taxation" in the state of temporary presence in any case. There is no suggestion that the state of original residence must have imposed a property tax. Since the language of the section does not establish a condition to its application, we would not be justified in doing so. For we are shown nothing that indicates that a straightforward application of the language as written would violate or affect the clear purpose of the enactment. See *United States* v. *Public Utilities Comm'n, ante,* p. 295, decided today, and cases cited. In fact, though the evils of potential multiple taxation may have given rise to this provision, Congress appears to have chosen the broader technique of the statute carefully, freeing servicemen from both income and property taxes imposed by any state by virtue of their presence there as a result of military orders. It saved the sole right of taxation to the state of original residence whether or not that state exercised the right.[3] Congress, manifestly, thought that compulsory presence in a state should not alter the benefits and burdens of our system of dual federalism during service with the armed forces.

For similar reasons, we reject the argument that the word "deemed" as used implies a rebuttable presumption so as to permit taxation by the state of temporary presence in some cases. Such a construction would nullify

---

[2] See also Hearings, House Committee on Military Affairs on H. R. 7029, 77th Cong., 2d Sess.; S. Rep. No. 959, 78th Cong., 2d Sess.; H. R. Rep. No. 1514, 78th Cong., 2d Sess.

[3] Hearings, note 2, *supra,* p. 28.

the statute. For in every case, the absence of the property from the state of the serviceman's temporary presence would be a fiction, rebuttable by further evidence.

*Reversed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

The power to tax is basic to the sovereignty of the states. *Railroad Co.* v. *Peniston,* 18 Wall. 5. There are few express restrictions of that power contained in the Constitution. See Art. I, § 10; *Richfield Oil Corp.* v. *State Board,* 329 U. S. 69; *Canton R. Co.* v. *Rogan,* 340 U. S. 511. And the implied restrictions are not numerous. A privilege secured by the Constitution, such as the right to free speech or the right to intercourse among the states, may not be taxed by a state. *Murdock* v. *Pennsylvania,* 319 U. S. 105. A state may not tax that part of an interstate operation which has no relation to the opportunities or benefits which it confers. *Standard Oil Co.* v. *Peck,* 342 U. S. 382. Nor may it discriminate in its tax scheme against interstate commerce or place an undue burden on it. *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307; *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U. S. 434; *Nippert* v. *Richmond,* 327 U. S. 416.

Closer in point are those instances where the state tax is levied on a federal instrumentality or on the means with which that instrumentality performs its functions. This exception is also represented by a rather narrow group of cases. See *Pittman* v. *Home Owners' Corp.,* 308 U. S. 21; *Federal Land Bank* v. *Bismarck Co.,* 314 U. S. 95; *Maricopa County* v. *Valley Bank,* 318 U. S. 357; *United States* v. *Allegheny County,* 322 U. S. 174. Cf. *Board of Commissioners* v. *Seber,* 318 U. S. 705. Some of those immunities were made explicit by an act of Congress. Some were implied. But the implied immunity,

which derives from a forbidden interference with a federal function, has a limited scope. It does not, for example, extend to salaries of federal functionaries (*Graves* v. *New York*, 306 U. S. 466), to the proceeds under a contractor's contract with the Federal Government (*James* v. *Dravo Contracting Co.*, 302 U. S. 134, 149 *et seq.*), or to sales taxes on goods and supplies furnished contractors with the Federal Government. *Alabama* v. *King & Boozer*, 314 U. S. 1. Cf. *Buckstaff Co.* v. *McKinley*, 308 U. S. 358. The power of Congress to *withhold* tax immunity is clear. But to date the power of Congress to *create* a tax immunity has been narrowly confined. It stems from "the power to preserve and protect functions validly authorized." See *Carson* v. *Roane-Anderson Co.*, 342 U. S. 232, 234. Up to the present the Court has never held that the *private* affairs of a federal employee can be made *public* affairs by Congress and immune from state taxation. The question was indeed reserved in *Graves* v. *New York, supra,* at 478–479. As MR. JUSTICE FRANKFURTER stated in his concurring opinion, *id.*, at 492, "Whether Congress may, by express legislation, relieve its functionaries from their civic obligations to pay for the benefits of the State governments under which they live is matter for another day."

The federal property used by the soldier, his activities as a federal employee, every phase of the functions he performs for the Army are immune from state taxation because his work is the work of the National Government. But the wages that he makes, as *Graves* v. *New York, supra,* held, can be taxed on a nondiscriminating basis by the states. So can his real and personal property. For in his private capacity a federal employee is no different from any other citizen. He receives protection and benefits from the society which the states create and maintain. Their police, their courts, their parks, their sanitary districts, their schools are all part of the civilization

which he enjoys. If he gets tax immunity, it means that other citizens must pay his share.

The Court does not profess to go so far. It merely says that this case turns on changing military assignments and the burden placed on service men and women as a result of that feature of their work. But we also know that service men and women receive salaries much lower than those earned in civilian life. Can Congress remove those salaries from the reach of state taxing officials because they are burdensome to our military personnel? Certainly the burden, the harassment, the unpleasantness of those taxes would be as easy to establish as the burden of the present tax. And the relation of the burden to the federal service would be as close and intimate in one case as in the other.

The private affairs of our military personnel—the disposition of their salary, the furniture they purchase, the apartments they rent, the personal contracts that they make—by the very definition are not in the federal public domain. When Congress undertakes to protect them from state taxation or regulation, it is not acting to protect either a federal instrumentality or any function which a federal agency performs. Congress, therefore, acts without constitutional authority.

In sum, the power to tax is basic to the sovereignty of the states. The creation of islands of tax immunity should therefore be sparingly made. The tax immunity here recognized is not contained in the Constitution. It cannot be fairly implied because Denver's tax does not burden the performance of any federal function.