UNITED STATES of America, and Lieutenant Stanley D. Schuman, U.S.N., a member of the armed forces of the United States on active military service not a resident of or domiciled in the State of Connecticut, suing on behalf of himself and all servicemen or former servicemen similarly situated and affected

v.

John L. SULLIVAN, Tax Commissioner of the State of Connecticut, Gerald A. Lamb, Treasurer of the State of Connecticut, Louis I. Gladstone, Comptroller of the State of Connecticut; and Harold M. Mulvey, Attorney General of the State of Connecticut.

Civ. No. 11928.

United States District Court
D. Connecticut.

June 28, 1967.

Jon O. Newman, U. S. Atty., David A. Golas, Asst. U. S. Atty., Hartford, Conn., Clinton B. D. Brown and William Masser, Dept. of Justice, Washington, D. C., for plaintiff.

Harold M. Mulvey, Atty. Gen., F. Michael Ahern, Ralph G. Murphy, Asst. Attys. Gen., Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

This is a suit by the United States and Lieutenant Stanley D. Schuman, U.S.N., on behalf of all nonresident or nondomiciliary military personnel now stationed in Connecticut against tax officials of the State of Connecticut. The Government seeks a judgment declaring that Connecticut's sales and use taxes (Chap. 219, Conn.Gen.Stat. § 12–406 to § 12–432, Rev. of 1958, as amended) cannot be collected from nonresident servicemen in respect of property purchased or used by them in Connecticut consistently with the remedial provisions of Section 514 of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 App. U.S.C. § 574 (1964)). A refund of all sums heretofore paid to Connecticut on account of said tax by military personnel who were neither residents nor domiciliaries of this state is also sought.

By agreement of counsel, the question of jurisdiction and the application for a preliminary injunction were postponed until the hearing on the merits.

## I. *Jurisdiction*

The defendants, John L. Sullivan and others, public officials of the State of Connecticut, moved to dismiss the suit against them on the ground that Congress has denied to a federal court jurisdiction of such a case. The specific ground is that this suit is barred by act of Congress, 28 U.S.C. § 1341, which provides:

> "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

This section grew out of the act of August 21, 1937 (Chap. 726, 50 Stat. 738) which generally withdrew jurisdiction from federal district courts to enjoin the collection of a state tax. See 1A J. Moore, Federal Practice ¶0.207, p. 2283 (1959 ed.).

Assuming that § 1341 is applicable, whether "a plain, speedy and efficient remedy may be had in the courts of [this] State" in the instant case is a difficult and close question. Compare Hillsborough Township v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946) with Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). But the question whether an adequate remedy exists in the state courts is a thicket which need not be entered.

■ Jurisdiction of this court in the case at bar is based on the fact that the United States is a party plaintiff. 28 U.S.C. § 1345. It is settled law that the right of the United States to sue as plaintiff in a federal district court is not limited by the provisions of § 1341. De-

partment of Employment v. United States, 385 U.S. 355, 357–58, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966); United States v. Arlington County, 326 F.2d 929, 931 (4th Cir. 1964). The rule in this circuit has long been to the same effect. United States v. Woodworth, 170 F.2d 1019 (2d Cir. 1948) (Frank, C. J.); United States v. City of New York, 175 F.2d 75 (2d Cir.), cert. denied, 338 U.S. 885, 70 S.Ct. 189, 94 L.Ed. 543 (1949).

■■ The defendants have attempted to distinguish the *Department of Employment* case from the instant action on the ground that the proprietary interest of the United States in its instrumentalities (e. g., the Red Cross as in *Department of Employment*) is more direct and immediate than the interest of the Government as representative of the class of its military personnel. In deciding that there was sufficient interest in the United States to sue, the Supreme Court relied upon the authoritative force of an unbroken line of authority, foremost among which was United States v. Arlington County, supra, 326 F.2d 929. See Department of Employment v. United States, supra, 385 U.S. 355, 358, n.6, 87 S.Ct. 464. *Arlington County*, like the instant action, was a suit by the United States to declare a state personal property tax invalid as in contravention of the Soldiers' and Sailors' Civil Relief Act of 1940. Its citation by the Supreme Court constitutes approval of the proposition that the United States in its capacity as a plaintiff representative of its military personnel is not bound by the restrictions of § 1341.[1]

## II.

■ Nor is the instant action barred by the general principle of sovereign immunity in that the State of Connecticut has not consented to this lawsuit. The sovereign immunity of a state may not be interposed as a defense when the United States is the party

---

1. An interesting analysis of the reasons for the nonapplicability of § 1341 restrictions to the United States as plaintiff is to be found in the opinion of Judge Haynsworth in United States v. Livingston, 179 F.Supp. 9, 11–12 (E.D. S.C.1959), aff'd per curiam, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960).

plaintiff. Department of Employment v. United States, supra at 358, 87 S.Ct. 464, citing Principality of Monaco v. Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) and Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908).

### III.

■ And there is no merit to the defendants' contention that the present case should more properly be considered by a three-judge district court in view of 28 U.S.C. § 2281. A three-judge cou t is required by § 2281 only when an injunction against the operation or execution of a state statute is sought "upon the ground of the unconstitutionality of such statute". This has been construed to apply only when the state statute is challenged as directly conflicting with the mandate of the Federal Constitution. The remedy sought here, if granted, will not completely paralyze the entire operation of Connecticut's statute.

■■ It is now settled that only one judge need sit where a state statute is alleged to be inoperative because of a federal statute which the Supremacy Clause of article VI of the Constitution declares pre-emptive of the state law. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), overruling Kesler v. Department of Public Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962). See Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942).

Accordingly, the defendants' motion to dismiss the complaint because barred by the provisions of 28 U.S.C. § 1341 or for the other reasons enumerated above is denied.

### The Merits

It has never been disputed [2] during the course of this proceeding that Connecticut has been assessing and collecting sales and use taxes from nonresident servicemen on active duty in respect of

personal property purchased or used by them in Connecticut, other than in a trade or business.[3] Connecticut is one of several states which imposes a retailers' sales and use tax at a statutorily fixed rate against personal property purchased or used within the state. The statute under which such taxes are imposed by Connecticut is the Education, Welfare and Public Health Tax Act (Chap. 219, Conn.Gen.Stat.Rev. of 1958, as amended) commonly referred to as the "Sales and Use Tax Act" (§§ 12–406 to 12–432 Conn.Gen.Stat.Anno.1958).

This case presents the question whether the provisions of the Soldiers' and Sailors' Civil Relief Act bars the defendants from collecting Connecticut sales and use taxes from nonresident servicemen present here in compliance with military orders.

### I.

■ The key provision upon which the plaintiffs rely is part of a comprehensive remedial statute designed "to protect those who have been obliged to drop their own affairs and take up the burdens of the nation." Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587 (1943). Cf. LeMaistre v. Leffers, 333 U.S. 1, 6, 68 S.Ct. 371, 92 L.Ed. 429 (1943). It is found in Section 514(1) (50 App. U.S.C. § 574 (1)) of the Soldiers' and Sailors' Civil Relief Act:

"For the purpose of taxation in respect of the *personal property* \* \* \* of any such [military] person by any State, Territory, possession, or political subdivision of any of the foregoing \* \* \* of which such person is not a resident or in which he is not domiciled \* \* \*, [his] *personal property shall* not be deemed to be located or present in or to *have a situs for taxation in such State, Territory, possession or political subdivision* \* \* \*." (Emphasis added).

---

2. A Stipulation of Facts, dated May 24, 1967, is incorporated into this opinion.

3. The "trade and business" proviso is not applicable here.

The emphasized words were added to the original version of the Soldiers' and Sailors' Civil Relief Act by amendment on July 3, 1944 (58 Stat. 722). A major reason for the enactment of the amendment was that the prior law did "not prevent the State of 'temporary residence' from taxing tangible personal property actually located in such State so long as the tax does not depend on residence or domicile." S.Rep.No. 959, 78th Cong. 2d Sess. 1 (1944). See H.R.Rep. No. 1514, 78th Cong. 2d Sess. 2 (1944).

When the section was amended again in 1962 (76 Stat. 768, Oct. 9, 1962),[4] it was subjected to legislative scrutiny without touching this particular provision because the Senate Committee regarded it as already making it "clear that a serviceman, living with his family and owning personal property in a State other than his State of domicile, is not subject to taxation on his personal property by the nondomiciliary State." S.Rep. No. 2182, 87th Cong.2d Sess. 1 (1962), accompanying H.R. 9747, U.S.Code Cong. & Adm.News 1962, p. 2841. Such approval by a legislative body is meaningful. Cf. Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 14, 59 S.Ct. 675, 83 L.Ed. 1071 (1939).

## II.

Connecticut's use tax is an excise "imposed on the storage, use or other consumption in this state of tangible personal property purchased from any retailer for storage, use or other consumption in this state * * *." Conn.Gen. Stat. § 12–411. See Stetson v. Sullivan, 152 Conn. 649, 211 A.2d 685 (1965).

Although in the words of the statute a sales tax is imposed "[f]or the privilege of selling tangible personal property at retail * * *," Conn.Gen.Stat. § 12–408(1), the retailer is required to collect the tax from the consumer, and the consumer is obligated to pay the tax to the retailer. Conn.Gen.Stat. § 12–408 (2). Both sales and use taxes are at the rate of 3½% of the sales price.

The defendants contend that Connecticut's sales and use taxes do not fall within the scope of the federal statute's ban against taxation "in respect of personal property."

The breadth and sweep of this phrase has widened under the impact of two recent Supreme Court cases. In Dameron v. Brodhead, 345 U.S. 322, 73 S.Ct. 721, 97 L.Ed. 1041 (1953), the petitioner was a commissioned officer of the United States Air Force, who resided in Denver, Colorado, while stationed at a nearby base. The local taxing authority assessed a tax on certain household goods comprising petitioner's personal property. This was duly paid. In the subsequent suit for refund, the state argued that the Soldiers' and Sailors' Civil Relief Act did not bar the tax since Louisiana, the state of petitioner's domicile, had not taxed the property. The federal law, it was argued, barred only multiple taxation and if the state of permanent residence or domicile did not tax, the state of "temporary residence" was free to do so. The Supreme Court rejected this narrow construction:

> "In fact though the evils of potential multiple taxation may have given rise to this provision, Congress appears to have chosen the broader technique of the statute carefully, freeing servicemen from both income and property taxes imposed by any state by virtue of their presence there as a result of military orders. It saved the sole right of taxation to the state of original residence whether or not that state exercised the right. Congress, manifestly, thought that compulsory presence in a state should not alter the benefits and burdens of our system of

---

4. The 1962 Amendment, not relevant here, provided that a serviceman domiciled in State Y, with a "temporary residence" in State X could not be subjected to a personal property tax by State X, when the serviceman was temporarily out at sea or assigned to a third State but had left his family and personal property behind in State X. 76 Stat. 768 (1962). See United States v. Arlington County, supra, 326 F.2d 929.

dual federalism during service with the armed forces." Dameron v. Brodhead, supra, 345 U.S. at 326, 73 S.Ct. at 724.

The state would distinguish *Dameron* from this case since the tax there was a recurring personal property tax, not a one-time excise imposed upon a transaction or registration. Such a distinction cannot survive the facts and logic of State of California v. Buzard, 382 U.S. 386, 86 S.Ct. 478, 15 L.Ed.2d 436 (1966).

The state tax in *Buzard* was a 2% "license fee" imposed by California Revenue and Taxation Code in addition to an $8.00 fee for the registration of an automobile. The Supreme Court was primarily concerned with § 514(2) (b) of the Soldiers' and Sailors' Civil Relief Act,[5] which allows the state of "temporary residence" to impose a "license, fee, or excise" if such a tax is (1) owing to and assessed by the home state, and (2) not yet paid to the home state by the serviceman. The Supreme Court limited the tax that could be assessed under § 514(2) (b) to the amount needed to support the functioning of the licensing and registration procedures of the state of "temporary residence." California was not permitted to assess a "license fee" under the proviso in § 514(2) (b) against an automobile owned by a nonresident serviceman in connection with registration of that automobile where the 2% tax imposed was for general revenue purposes.

The Court ruled at the outset of its opinion that California could collect the 2% tax *"only* if it * * * [was] a 'license, fee, or excise' on a motor vehicle or its use." (382 U.S. 392–393, 86 S.Ct. 483). Since the sole tax which could legally be imposed on motor vehicles was that allowed by § 514(2) (b) and the amount of this tax was limited to that necessarily incident to registration and licensing of vehicles, the implication

that no additional amount could be taxed for the use of the automobile is clear.

No viable distinction can be drawn between automobiles and other forms of personal property. The import of *Buzard* is that a state may not tax personal property of nonresident servicemen under any label, except within the limited and sharply defined registration and license exceptions contained in § 514(2) (b).

█ The Connecticut use tax (§ 12–411 et seq.) on the "storage, use or other consumption" of personal property in this state is therefore a tax prohibited by federal law from being imposed on nonresident servicemen.

### III.

█ The state argues that the sales tax (§ 12–408 et seq.) is a tax on the transaction of purchase and not upon the ownership of personal property. This position must be rejected. Although imposed initially on the retailer "[f]or the privilege of selling tangible personal property at retail" (§ 12–408 (1)), the ultimate incidence of this tax falls on the purchaser from whom the retailer is required by statute to collect reimbursement (§ 12–408(2)). The Connecticut Supreme Court has conceded the ultimate incidence of the sales tax and has ruled that where the Federal Government is the ultimate purchaser, no tax can be levied. Avco Mfg. Corp. v. Connelly, 145 Conn. 161, 140 A.2d 479 (1958).

█ Although the sales tax and use tax are distinct provisions, in terms and in concept for some purposes (see Connecticut Light & Power Co. v. Walsh, 134 Conn. 295, 300, 57 A.2d 128, 1 A.L.R. 2d 453 (1948)), in practical effect they are complementary and designed to promote equality of taxation on personal property whether purchased in state or out of state. Avco Mfg. Corp. v. Connel-

---

5. Section 514(2) (b) (50 App. U.S.C. § 574(2) (b)) provides:

"[T]he term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to mo-

tor vehicles or the use thereof: *Provided,* That the license, fee or excise required by the State * * * of which the person is a resident or in which he is domiciled has been paid."

ly, supra, 145 Conn. at 172, 140 A.2d 479. Moreover, Connecticut imposes a *use* tax rather than a sales tax on the purchase of a motor vehicle, boat or airplane from other than a licensed dealer. Conn.Gen. Stat. § 12–431. Connecticut has merged the purposes and imposition of the sales and use taxes to such an extent that they are but one tax in practical effect. Any distinction between them in the context of this case would be one of form only, not of substance. The bulk of proceeds of both taxes are used indiscriminately to promote the public health, welfare and education and for no other purpose. (§ 12–432).

Each tax hits with equivalent impact on the personal property of a nonresident serviceman. The fact that the statutory scheme for payment of the sales tax which puts the burden of collecting it on the retailer, with the right to enforce its payment by suit against the buyer, is substituted for a lien on the property itself hardly establishes that the property is not being taxed. Cf. United States v. Allegheny County, 322 U.S. 174, 187, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). And, although generally a property tax differs from a sales tax in being a recurrent annual demand on capital value instead of a single exaction on the initial transaction whereby ownership rights are acquired, in either case both the legal incidence of the tax and the economic burden is imposed on the vendee. The difference in the rate does not change the incidence of the tax. Under whatever method the tax is enforced, or by whatever form its subject may be described, in substance the amount of the tax assessed is precisely determined by the value of the property. No matter which attribute of possessory interest in the property is hit—initial acquisition of ownership, or continued retention—it is always the nonresident serviceman who is hurt when the tax is levied.

Any confusion about concepts and definitions is considerably clarified by the rationale of the Soldiers' and Sailors' Civil Relief Act. The Congress was not measuring the exemption against particular concrete forms a state's tax might take. The rationale for the exception resulting in a certain measure of favored tax treatment which clearly emerges from the statute is that a nonresident serviceman should be exempt from "the burden of supporting the government of the States where he was present solely in compliance with military orders." State of California v. Buzard, supra, 382 U.S. at 393, 86 S.Ct. at 483. Dameron v. Brodhead, supra, 345 U.S. 322, 73 S.Ct. 721.

Reading § 514 "with an eye friendly to those who dropped their affairs to answer their country's call," LeMaistre v. Leffers, supra, 333 U.S. at 6, 68 S.Ct. at 373, the imposition of the sales tax and the use tax must yield to the mandate of Congress. Accordingly, I hold that the phrase "taxation in respect of personal property" in § 514 embraces Connecticut's "Sales and Use" taxes.

### IV.

The state also argues that Congress in enacting the Buck Act (4 U.S.C. §§ 104–110) has conferred upon the states jurisdiction to collect sales and use taxes "in any Federal area." 4 U.S. C. § 105. The Buck Act, it is contended, would conflict with any construction of the Soldiers' and Sailors' Civil Relief Act which would bar a state from collecting sales and use taxes. The adage that conflicting statutes must be construed so as to give effect to both is invoked. United States v. Zacks, 375 U.S. 59, 67–68, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963). Accordingly, it is argued, the Soldiers' and Sailors' Civil Relief Act should not be construed to apply to sales and use taxes in order to avoid a conflict of federal statutes.

Section 105 of the Buck Act merely provides that no person "shall be relieved from liability * * * on the ground that the sale or use * * * occurred in whole or in part within a Federal area * * *." The Soldiers' and Sailors' Civil Relief Act, however, gives relief from liability on an entirely different ground, namely, that the per-

son taxed is a nonresident serviceman. The scope and purpose of the two statutes are entirely separate and distinct. There is no conflict between them. In granting states permission to impose sales taxes within the federal enclave Congress did not say that it granted authority to impose taxes on sales to nonresident servicemen generally.

## V.

The state raises an affirmative defense that the Government is barred from bringing this suit under the doctrine of laches. The relevant words of § 514(1) (50 App. U.S.C. § 574(1)) were added by amendment in 1944 and the Connecticut Sales and Use tax was enacted in 1947. Connecticut has, therefore, been collecting these taxes for twenty years. So the state argues. But the ostensible illegality of these assessments may not have become obvious until the very recent decisions of the United States Supreme Court in *Dameron* and *Buzard*. However, a decision on the merits as to whether laches existed need not be made.

██ It is a matter of well-settled law that the "United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940). The principle has its roots deep in the common law. It is epitomized in the ancient maxim: *Nullum tempus occurrit regi.*[6] Today, the rule is not based so much on the prerogative of the sovereign as on the needs of public policy. Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938); United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194 (1878). The principle was very recently confirmed in Costello v. United States, 365 U.S. 265, 281, 81 S.Ct.

534, 5 L.Ed.2d 551 (1961). In summary, the United States, as sovereign, is not subject to a defense of laches when it sues. That defense may not be interposed here.

But conceding that the Government may pursue this action for a declaratory judgment, it does not follow that individual servicemen may ignore the state procedure in claiming refunds for taxes already paid.

"No refund shall be allowed unless a claim therefor is filed with the commissioner within three years from the last day of the month succeeding the quarterly period for which the overpayment was made, or, with respect to assessments made under sections 12–415 and 12–416, within six months after the assessments become final, or within six months from the date of overpayment, whichever period expires later. No credit shall be allowed after the expiration of the period specified for filing claims for refund unless a claim for credit is filed with the commissioner within such period, or unless the credit relates to a period for which a waiver is given pursuant to subsection (8) of section 12–415." Conn. Gen.Stat. § 12–425(2).

██ State law has been given effect as controlling the assessment date for property taxes even when a congressional exemption existed after a specified date. Board of County Commissioners v. Seber, 130 F.2d 663, 670 (10th Cir. 1942), aff'd, 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094 (1943). Also,

"In the absence of explicit legislative policy cutting across state interests, we draw upon a general principle that the beneficiaries of federal rights are not to have a privileged position over other aggrieved tax-payers in their

6. An excellent analysis of the history and policy of the rule and maxim is to be found in Guaranty Trust Co. of New York v. United States, supra, 304 U.S. at 132, 58 S.Ct. 785. Justice Stone traces its development from the Magdalen College Case, 11 Co.Rep. 66b, 74b and Bracton, De Legibus, Lib. ii, c. 5, § 7, down to the opinion of Judge Story in United States v. Hoar, Fed.Cas.No.14,373, pp. 329, 330. Judge Story states that the reason for the rule is "to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers."

relation with the states or their political subdivisions." Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939).

The Supreme Court explicitly avoided deciding the applicability of the state statute of limitations in a suit brought by private litigants to recover state taxes assessed and collected in violation of a specified federal exemption. Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 25, 40 S.Ct. 419, 64 L.Ed. 751 (1920).

■■■■ Moreover, the beneficiaries of the federally created exemption from state taxes in *Seber, Ward,* and *Jackson County* were American Indians. These people have long occupied a special position as wards of the United States.[7] A particularly favorable construction is to be accorded tax exemptions secured to the Indian people. Carpenter v. Shaw, 280 U.S. 363, 366–367, 50 S.Ct. 121, 74 L.Ed. 478 (1930). But, although a state cannot invalidate a federally created right, state law may implement its exercise in the interest of orderly administration.[8] Board of County Commissioners v. Seber, supra, 130 F.2d at 670; see Board of Commissioners of Jackson County v. United States, supra, 308 U.S. at 351–352, 60 S.Ct. 285 (Mr. Justice Frankfurter).

■■■ Accordingly, an individual serviceman seeking to recover sales and use taxes paid to Connecticut must comply with the three year statute and the procedure outlined in Conn.Gen.Stat. § 12–425(2). Connecticut law does not require formal protest[9] at time of payment in order to recover taxes paid, provided a claim for refund is made within the time specified in § 12–425(2).

## VI.

■■■■ A final point remains to be considered. Besides the United States of America, Lt. Stanley D. Schuman, U.S.N., is a party plaintiff who sues for himself and on behalf of all servicemen or former servicemen similarly situated and affected, too numerous to be made parties. There undoubtedly are attributes to this action by him which would have been sufficient to meet the prerequisites of Rule 23(a), Fed.R.Civ. P., for a class action,[10] and this case also fits neatly within the additional requirement of Rule 23(b) (2):

> "[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;"

But there is a significant deficiency in the pleadings. Even if this were to be treated as a class action brought by Lt. Schuman so as to permit aggregation of all the individual claims in order to es-

---

7. See the opinion of Mr. Justice Black in Board of Commissioners of Jackson County v. United States, supra, 308 U.S. at 353, 60 S.Ct. 285. See also Board of County Commissioners v. Seber, supra, 318 U.S. at 715, 63 S.Ct. 920.

8. This principle is applicable at least when the suit is by a private litigant, even if not controlling in a suit by the United States. Compare City of New Orleans v. United States, 371 F.2d 21, 28 (5th Cir. 1967) with United States v. Cocreham, 247 F.Supp. 731, 741 (E.D.La.1965).

9. See District of Columbia v. McFall, 88 U.S.App.D.C. 217, 188 F.2d 991, 992 (1951).

10. Rule 23(a) provides:
"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

tablish the requisite jurisdictional amount under either 28 U.S.C. § 1331 or 1332, this amount is not alleged to be in controversy. Considering that his own claim is for $21.53, an assumption that the requisite amount must exist is somewhat speculative. More significantly, the eleventh amendment forbids a suit by a private individual against a state in the federal courts. Nor does Connecticut's consent to be sued in its own court (Conn.Gen.Stat. § 12–422) impart its consent to be sued in a federal court. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 465, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Schuman's claim is dismissed for lack of jurisdiction without prejudice to his claim against the State of Connecticut.

The litigious situation presented by this case will be quite as fully benefited as a practical matter by granting the relief sought by the Government, for that will settle the legality of the state's refusal to honor the exemption from its sales and use taxes which § 514 of the Soldiers' and Sailors' Civil Relief Act requires. Commendably, counsel for both parties have agreed that declaratory relief rather than injunctive relief will suffice to secure the state's ready compliance with the court's ruling.

Accordingly, the court

Decrees and adjudges that judgment enter declaring that each and all assessments and collections of sales or use taxes which defendants have made and are making in respect of personal property purchased or used in Connecticut by Schuman and other persons, who, at the time as of which the tax was or is levied, were or are members of the Armed Forces of the United States on active duty and residents of or domiciled in states other than Connecticut and absent from such states solely by reason of compliance with military or naval orders, were and are in contravention of the Soldiers' and Sailors' Civil Relief Act of 1940.