Representative Paul Schauer Colorado House of Representatives State Capitol Denver, CO 80203
Dear Representative Schauer:
In your letter of September 4, 1984 you asked four questions regarding constitutional impediments to legislative action concerning the reorganization of higher education in Colorado. The questions and my conclusions are as follows:
QUESTIONS PRESENTED AND CONCLUSIONS
1. To what extent could legislation be enacted to reorganize the governance system of higher education, notwithstanding the listing of institutions and the specific reference to the regents of the University of Colorado in article VIII, section 5?
 My conclusion is that the general assembly has broad authority to enact legislation to reorganize the governance system of higher education. In my opinion, article VIII, section 5 of the Colorado Constitution establishes ultimate authority for the governance of institutions of higher education in the general assembly, with the exception that the right to control the medical center at Denver is reserved in the board of regents.
2. Could any of the institutions under the regents, with their facilities, faculty, administration, and students, be made a part of a governance system apart from the regents without specific constitutional changes being made in section 5 of article VIII?
My conclusion is "yes."
3. Could additional institutions be placed under the jurisdiction of the board of regents by statute, without amending the constitution to add that campus to the authority of the regents?
My conclusion is "yes."
4. Could a board be created by statute to have authority over the role and mission of the campuses of the University of Colorado including the power to initiate or to terminate academic and support programs?
 My conclusion is "yes." Although the internal affairs of the University of Colorado remain within the exclusive control of the regents, the general assembly has broad authority to plan and manage state educational programs.
ANALYSIS
1. Article VIII, section 5 of the Colorado Constitution was a referred bill from the general assembly and was submitted to the electorate as amendment 4 on the 1972 ballot. The section reads as follows:
 (1) The following educational institutions are declared to be state institutions of higher education: The university at Boulder, Colorado Springs, and Denver; the university at Fort Collins; the school of mines at Golden; and such other institutions of higher education as now exist or may hereafter be established by law if they are designated by law as state institutions.
 The establishment, management, and abolition of the state institutions shall be subject to the control of the state, under the provisions of the constitution and such laws and regulations as the general assembly may provide; except that the regents of the university at Boulder, Colorado Springs and Denver may, whenever in their judgement the needs of that institution demand such action, establish, maintain, and conduct all or any part of the schools of medicine, dentistry, nursing, and pharmacy of the university, together with hospitals and supporting facilities and programs related to health, at Denver; and further, that nothing in this section shall be construed to prevent state educational institutions from giving temporary lecture courses in any part of the state, or conducting class excursions for the purpose of investigation and study; and provided further, that subject to prior approval by the general assembly, nothing in this section shall be construed to prevent the state institutions of higher education from hereafter establishing, maintaining, and conducting or disconducting centers, medical centers, or branches of such institutions in any part of the state.
 (2) The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
Id. (emphasis added).
A careful and detailed construction of this section 5 and analysis of the legislative history was undertaken in an attorney general opinion dated April 12, 1979. Three questions, closely related to the questions you have asked, were answered by the then attorney general regarding the governance of the University of Colorado at Denver (UCD). Pertinent portions of that opinion read as follows:
 Question 1: Would it be possible under section 5, article VIII to remove UCD as an institution under the jurisdiction of the State board of regents?
 Conclusion: (in part) Yes.
 Analysis: (in part) The second sentence of subsection (1) . . . clearly indicates the unambiguous intention to reserve to the general assembly the right to establish, manage and abolish all higher educational institutions . . . .
 It is therefore clear from the words chosen in subsection (1) that the constitutional provision was fully intended to grant to the general assembly the right to create, direct, control, govern, administer, abrogate, annul, or cancel the institutional governance of the various higher educational institutions when such was deemed appropriate.
 / After considering the extensive legislative history of article VIII, section 5, including a legislative council report and ballot analysis the opinion states as follows: /
 The language . . . of the analysis reveals the intent to modify governance of institutions by legislative enactment rather than constitutional amendment.
The opinion, in addition, concluded that another institution of higher education could replace UCD either under one of the existing boards or under a newly created board. Furthermore, the constitution did not require the continued existence of an entity known as the University of Colorado at Denver.
There have been no constitutional amendments, legislative enactments, or intervening judicial interpretations since that opinion was given which would alter the conclusions reached therein. That opinion continues to be an accurate statement of the law and the reasoning behind it is equally applicable to the questions you have raised. In my opinion, the conclusions reached regarding legislative alteration of UCD are the same for all institutions of higher education including those institutions enumerated as such in the constitution and the statutes.
The language contained in the first sentence of subsection (1), article VIII, section 5, clearly provides for coextensive constitutional status among those institutions of higher education enumerated in the constitution and "such other institutions of higher education as now exist or may hereafter be established by law if they are designated by law as state institutions." The legislative history of article VIII, section 5 supports this conclusion.
It is a well established practice in Colorado to consider relevant information about the historical background of an enactment in the course of making decisions about how it is to be construed and applied. Industrial Commission v. Milka,159 Colo. 114, 410 P.2d 181 (1966); People ex rel. Griffithv. Scott, 52 Colo. 59, 120 P.2d 126 (1911). Article VIII, section 5 was submitted to the voters along with proposed amendments to article IX as amendment 4 on the November 1972 ballot. The constitutional amendments were part of a sweeping package of legislation concerning the coordination and governance of higher education which was extensively debated in the general assembly. The 1972 constitutional amendments were recommended by the legislative council of the general assembly in a report entitled Colorado Legislative Counsel Research Pub. No. 179,Report to the Colorado General Assembly:Organization of State Government (1971). Reports of standing committees are a particularly good source for determining the intent of the legislature when they set forth the committee's grounds for recommending the passage of a proposed bill, United States v. Five Gambling Devices, 346 U.S. 441
(1953); Cass v. Dameron, 125 Colo. 477, 244 P.2d 1082
(1952). In addition, when the constitutional amendments were referred to the voters as amendment 4 in 1972, the legislative council prepared a ballot analysis, Colorado Legislative Counsel Research Pub. No. 179, An Analysis of1972 Ballot Proposals (1972). The statements made therein are of further assistance in verifying the intent of article VIII, section 5.
In part, based on the legislative council's recognition of "concern that all schools be given equal legal footing,"Organization of State Government at 5, the constitutional amendments were recommended with the following language, at 8:
 In addition to enumerating certain institutions and their locations, the committee submits new language specifying that other schools now existing or which may be established in the future shall also be recognized as state institutions if so designated by law. The proposed language continues by providing that the establishment, and abolition of state institutions of higher education shall be subject to control by the general assembly. . . . The intent of the committee is clear: the new language (a) gives all institutions constitutional designation; and (b) gives the general assembly the final authority in the establishment of state institutions of higher learning.
(emphasis in original text). The legislative council reiterated this point in its ballot analysis as follows:
 The proposal places all state educational institutions on an equal constitutional footing by extending general supervision of institutions and exclusive control of their funds to all governing boards. Of course, such control may be modified by legislative enactment.
An Analysis of 1972 Ballot Proposals at 8 (emphasis added).
You have asked, in part, whether the specific listing of institutions in article VIII, section 5 is an impediment to legislative reorganization of higher education. Although there can be no doubt as to the equal status of all institutions of higher education, an argument can be made that the specified geographic location of the institutions enumerated in the constitution may not be disturbed by legislative enactment. However, the plain meaning of article VIII, section 5, as supported by the legislative history, indicates that the general assembly has the power to make locational decisions.
Prior to the 1972 amendments, article VIII, section 5 contained the following language: "and the location of said institutions . . . are hereby confirmed to the use and benefit of the same respectively." This language was construed to mean that the location of the named institutions could not be changed except by constitutional amendment. In re SenateResolution, 9 Colo. 626, 21 P. 472 (1886); People exrel. Jerome v. Regents, 24 Colo. 175, 49 P. 286 (1897). The 1972 amendments retained (and added to) the locational references and deleted the confirmation language of the prior section 5. It is a standard principle of statutory and constitutional interpretation that when one provision is repealed and replaced by another which differs materially from the first, as by the omission of an entire clause, the omitted clause must be presumed to have been deliberately and meaningfully omitted.See 82 C.J.S., Statutes § 370, at 846 (1953). The general assembly's jurisdiction over locational decisions has not been considered by the courts since the 1972 amendments were ratified.[1]
The legislative council's amendment recommendations were "guided by the principle that the general assembly should have the distinct prerogative to determine through statutory means thelocation, function and process of schools . . . ."Organization of State Government at 5 (emphasis added). Furthermore, the ballot analysis prepared by the legislative council contained the following statement, "The proposed amendment also gives the legislature . . . jurisdiction over thelocation and functions of schools." An Analysis of1972 Ballot Proposals at 8 (emphasis added). These clarifying statements support my conclusion that the 1972 amendments were intended to vest locational decisions in the legislature.
The final aspect of your first question is whether the specific reference to the regents of the University of Colorado would have an affect on any legislative effort to reorganize higher education. Although article VIII, section 5 vests with the regents the authority to establish, maintain, and conduct higher educational facilities and supportive programs related to health in Denver, subsection (2) of article VIII, section 5 makes it abundantly clear that all governing boards have the same constitutional status as the regents.[2] It should be noted, however, that the board of regents is unique among governing boards in one technical respect. The board of regents is created by article IX, section 12 of the Colorado Constitution whereas the other governing boards are the product of the general statutes. The resulting anomaly is that although the general assembly has the constitutional authority to abolish institutions, make locational decisions, and expressly circumscribe the supervisory powers of the various governing boards (including the regents), the board of regents itself may not be tampered with without amending the constitution. As a practical matter, however, the constitutional origins of the board of regents in article IX pose no identifiable impediments to legislative reorganization of the governance system of higher education.[3]
2. and 3. As discussed above, the regents are on the same legal footing as the other governing boards with respect to the supervision and control of their respective institutions. Two recent cases interpreting subsection (2) of article VIII, section 5 have held that the authority of the governing boards (and specifically the regents) may be circumscribed by a legislative enactment expressly aimed at doing so. Uberoi v. Universityof Colorado, et al., 83 SA 101 (Colo. August 27, 1984);Associated Students of the University of Colorado v.Regents, 189 Colo. 482, 543 P.2d 59 (Colo. 1975). The general assembly's power to modify by legislative enactment the supervisory authority of the governing boards coupled with its power to establish, manage, and abolish the state institutions makes it clear that no constitutional amendment need be adopted in order to alter the governance of any of the institutions presently under the supervision of the regents. The general assembly's power to establish institutions under the jurisdiction of the regents is no less than its power to remove them. Thus, not only may the general assembly make an institution currently under the regents part of a governance system apart from the regents, but it may add institutions to the jurisdiction of the regents as well.
4. Prior to 1973, article IX, section 14 of the constitution specified the power of the board of regents to supervise its institutions as follows:
 The board of regents shall have the general supervision of the University and the exclusive control and direction of all funds of and appropriations to, the University.
The case law interpreting this provision established that the general assembly could not invade, by legislation, this broad grant of authority to the regents. In re InheritanceTax, Mackey Estate, 46 Colo. 79, 102 P. 1075
(1909); Burnside v. Regents, 281 F. Supp. 280 (D. Colo. 1968). The 1972 amendments repealed article IX, section 14 without the enactment of any equivalent language. As a result, the powers of the board of regents are determined by subsection (2) of article VIII, section 5 as a governing board "established by this constitution" and, as such, its powers may be expressly circumscribed by the general assembly. Uberoi,supra; Associated Students, supra. Although the regent's governance of the University of Colorado may be modified by express legislative enactment, "the General Assembly has neither the intent nor the desire to oversee the specific operations of the schools themselves."Organization of State Government at 8; An Analysisof 1972 Ballot Proposals at 8 (argument 1 for adoption of the proposal amendment). Although the internal affairs of the University of Colorado remain within the exclusive control of the regents, the general assembly has broad authority to carefully plan and manage state educational programs, with one exception. Article VIII, section 5 rests the right to control programs affecting the medical center at Denver in the board of regents.
SUMMARY
In summary, with the exception of the University of Colorado Medical School, the general assembly is free to enact legislation reorganizing the governance system of higher education. Neither constitutional references to the geographic location of certain institutions nor the constitutional origins of the board of regents impede the general assembly's ability to act in this area. As stated by the legislative council, Organization ofState Government at 8: "Ultimate control over higher education in Colorado rests with the general assembly."
Very truly yours,
 DUANE WOODARD Attorney General
EDUCATION, HIGHER EDUCATIONAL INSTITUTIONS LEGISLATURE
Colo. Const. art. VIII, § 5
LEGISLATIVE BRANCH House of Representatives HIGHER EDUCATION, DEPT. OF
The general assembly is free to enact legislation reorganizing the governance system of higher education, except the right to control programs affecting the medical center at Denver is vested in the board of regents.
[1] In one of the few cases to consider art. VIII, § 5 since the 1972 amendments, the Colorado Court of Appeals cited a preamendment case, People ex rel Jerome v. Regents,supra., with approval, for the proposition that "the effect of this constitutional provision is to fix permanently the location of the state universities, establishing their principal campuses as a matter of law." Londer v. Friednash,38 Colo. App. 350, 352, 560 P.2d 102, 109 (1976). However, the court's determination in Londer v. Friednash concerned the status of the University of Colorado Medical School as a "principal campus" of the university for purposes of a prohibition in the state's liquor code. The court did not consider the jurisdictional issue nor did it consider what effect, if any, the 1972 amendments had on the locational aspect of art. VIII, § 5.
[2] The legislative council stated the following:
 There has been considerable sentiment that the constitutional position of the board of regents should be altered either by removing its special status from the constitution or by sharing this status with the other governing boards of institutions of higher learning. This proposal extends constitutional status to all governing boards for institutions of higher education and clarifies the prerogative of the general assembly to modify that control by statute. An Analysis of 1972 Ballot Proposals at 8.
[3] The legislative council recognized this when it made the following statement: "The committee is of the opinion that, as a practical matter, constitutional status may not be significant."Organization of State Government at 5.