398 F.2d 672
 UNITED STATES of America, and Lieutenant Stanley D. Schuman,
U.S.N., a member of the armed forces of the United States on
active military service not a resident of or domiciled in
the State of Connecticut, suing on behalf of himself and all
servicemen or former servicemen similarly situated and
affected, Plaintiffs-Appellees,
v.
John L. SULLIVAN, Tax Commissioner of the State of
Connecticut; Gerald A.Lamb, Treasurer of the State of
Connecticut; Louis I. Gladstone, Comptroller ofthe State of
Connecticut; and Robert K. Killian, Attorney General of the
StateofConnecticut, Defendants-Appellants.
 No. 427, Docket 32007.
 United States Court of Appeals Second Circuit.
 Argued May 16, 1968.
Decided July 10, 1968.
 
 F. Michael Ahern, Asst. Atty. Gen., Hartford, Conn. (Robert K. Killian, Atty. Gen., Ralph G. Murphy, Richard A. Gitlin, Asst. Attys. Gen., on the brief), for defendants-appellants.
 J. Edward Shillingburg, Atty., Dept. of Justice, Washington, D.C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William Massar, Attys., Washington, D.C.; Jon O. Newman, U.S. Atty. for the District of Connecticut, on the brief), for plaintiffs-appellees.
 Before MOORE, HAYS and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge.
 
 
 1
 This case was brought by the United States of America[1] against various officials of the State of Connecticut to determine whether servicemen present in Connecticut solely by reason of military orders are subject to Connecticut's sales and use taxes. The United States District Court for the District of Connecticut, M. Joseph Blumenfeld, J., granted the motion of the United States for summary judgment, 270 F.Supp. 236 (1967), on the ground that collection of such taxes contravened section 514 of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. App. 574.[2] Defendants appealed; we affirm.
 
 
 2
 Like most states, Connecticut levies a broad pattern of sales and use taxes on its residents. Conn.Gen.Stats. 12-406 to 12-432a. With certain exceptions, all retail sales of tangible personal property are subject to the sales tax. The retailer pays the state three and one-half per cent of his gross receipts on goods subject to the tax, section 12-408(1); in turn, he is entitled to reimbursement from the customer. Sections 12-408(2), (3). The use tax, section 12-411, is imposed at the same rate on the 'storage, use or other consumption' in Connecticut of 'tangible personal property' purchased from a retailer for such storage, use or other consumption. Under the use tax, the customer is directly liable to the state, although if the purchase is made from a Connecticut retailer who collects the tax, the customer is relieved of liability. Section 12-411(2). Sales of motor vehicles, boats and airplanes from other than licensed dealers are also subject to the use tax. Section 12-431. When a Connecticut sales tax has been collected, the use tax does not apply. Section 12-413(1). Finally, whether a sales or use tax has been collected, all proceeds are to be used exclusively for 'public health, welfare and education purposes.' Section 12-432.
 
 
 3
 In the district court, the United States offered some examples of the imposition of these taxes on naval personnel domiciled in other jurisdictions but stationed in Connecticut. Lieutenant Stanley D. Schuman of Nebraska[3] and Commander Kent J. Carroll of Michigan both purchased used motorboats in Connecticut from non-dealers. Schuman paid the use tax under protest; Carroll refused to pay. Commander Clyde H. Shaffer of Pennsylvania purchased a new car from a Connecticut dealer who collected the sales tax. Commander Jerome W. Roloff of Wisconsin bought a used car in Florida, and paid a sales tax there. When he subsequently registered the car in Connecticut, he was required to pay the difference between the Florida sales tax and the Connecticut use tax. Finally, Commander William L. Foster purchased a new car from a Connecticut dealer and at the same time registered it in Texas, his home state, paying a Texas sales tax. Nevertheless, the dealer collected a full Connecticut tax.
 
 
 4
 The sole question on appeal is whether these purchases, and others like them, were exempt from Connecticut's sales and use taxes because of section 514 of the Soldiers' and Sailors' Civil Relief Act.[4] In relevant part, that section provides, 50 U.S.C. App. 574:
 
 
 5
 (1) For the purposes of taxation in respect of any person, or of his personal property, income, or gross income, by any State * * * such person shall not be deemed to have lost a residence or domicile in any State * * * solely by reason of being absent therefrom in compliance with military or naval orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State * * * while, and solely by reason of being, so absent. For the purposes of Taxation in respect of the personal property, income or gross income of any such person by any State * * * of which such person is not a resident or in which he is not domiciled, compensation for military or naval service shall not be deemed income for services performed within, or from sources within, such State * * * and personal property shall not be deemed to be located or present in or to have a situs for taxation in such State * * *. Where the owner of personal property is absent from his residence or domicile solely by reason of compliance with military or naval orders, this section applies with respect to personal property, or the use thereof, within any tax jurisdiction other than such place of residence or domicile, regardless of where the owner may be serving in compliance with such orders: Provided, That nothing contained in this section shall prevent taxation by any State * * * in respect of personal property used in or arising from a trade or business, if it otherwise has jurisdiction. * * *
 
 
 6
 (2) When used in this section, (a) the term 'personal property' shall include tangible and intangible property (including motor vehicles), and (b) the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof: Provided, That the license, fee, or excise required by the State * * * of which the person is a resident or in which he is domiciled has been paid.
 
 
 7
 The basic purpose of section 514, as it now reads, is clear from its wording and structure. It defines the residence of servicemen, the source of their income, the situs of their property, and the nature of taxation, all for the purpose of exempting servicemen from certain forms of taxation by states in which they are stationed. Section 514(1) first provides that a serviceman shall not lose his home state residence or domicile because of absence due to military orders. Correlatively, it also states that he shall not acquire a residence or domicile in a host state because of his presence there under the same military requirement. It then illustrates the consequences of these provisions. For the purpose of state taxation on income, compensation for military service 'shall not be deemed income * * * from sources within' any state of which the serviceman is not a resident. For the purpose of taxation 'with respect to personal property, or the use thereof,' that property shall not be deemed 'to have a situs for taxation' in the host state. Thus, section 514(1) eliminates jurisdictional grounds that otherwise could support taxation by the host state related to the income or personal property of a serviceman. The broad nature of section 514(1) is also made clear by the definitions in section 514(2), which provide that 'the term 'personal property' shall include tangible and intangible property (including motor vehicles),' and that 'the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof.' jn5
 
 
 8
 In considering whether Connecticut's sales and use taxes are affected by section 514, we turn from its broad design to its details, recognizing that while the face of the statute is not always the end of its interpretation, cf. In re Miracle Mart, Inc., 396 F.2d 62 (2d Cir. 1968), it is undeniably a good place to start. In arguing that nonresident servicemen stationed in Connecticut are exempt from these state taxes, the United States relies on the language of section 514, which by its terms affects taxation 'in respect of * * * personal property.' The Connecticut use tax is explicitly levied on the storage, use or consumption in Connecticut of 'tangible personal property' purchased from a retailer for such use, and the amount of tax is computed by reference to the 'sales price of the property.' By its very terms, this is a tax 'in respect of * * * personal property.' The statutory phrase has a generous reach. The United States argues that it would seem to encompass all taxes, no matter how labelled, which pertain or relate to personal property, rather than to be limited to taxes on personal property. Certainly, if a nonresident serviceman's personal property is deemed, in the words of the statute, not to be present in the state, it would be difficult to justify a use tax on it. We realize that this begs the question, for such ghostly absence is allowed only for the purpose of specified taxes, whose definition we must construe. But the assumption helps to show the connection between the tax and the physical presence in the state of the personal property, a taxable nexus which seems to fall within the broad phrase 'in respect of * * * personal property.' Congress clearly had in mind the breadth of that language in removing from its effect taxes on a trade or business. Moreover, section 514 twice specifically envisions the possibility of taxes involving the 'use' of property. Thus, subsection (1) states that the exemption from state taxation applies to taxation:
 
 
 9
 with respect to personal property, or the use thereof, within any tax jurisdiction other than such place of residence or domicile, regardless of where the owner may be serving in compliance with such (military) orders * * *.[7]
 
 Similarly, subsection (2) states that:
 
 10
 the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof * * *.
 
 
 11
 The Connecticut sales tax, which is incurred at the time of purchase, is in terms based upon the retailer's privilege of sale, but what he must sell is 'tangible personal property.' Moreover, whatever the conceptual basis may be, the tax is in reality also assessed against the buyer of the 'tangible personal property,' as the Connecticut Supreme Court has held, see Avco Mfg. Corp. v. Connelly, 145 Conn. 161, 140 A.2d 479, 484 (1958), and as the statute explicitly requires. Section 12-408(2). See also First Agricultural Nati'l Bank v. State Tax Commission, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968). Judge Blumenfeld pointed out in his thorough opinion, 270 F.Supp. at 243-244, that the sales and use taxes are:
 
 
 12
 Complementary and designed to promote equality of taxation on personal property whether purchased in state or out of state. * * * Connecticut has mereged the purposes and imposition of the sales and use taxes to such an extent that they are but one tax in practical effect. Any distinction between them in the context of this case would be one of form only, not of substance. * * *
 
 
 13
 Each tax hits with equivalent impact on the personal property of a nonresident serviceman. The fact that the statutory scheme for payment of the sales tax which puts the burden of collecting it on the retailer, with the right to enforce its payment by suit against the buyer, is substituted for a lien on the property itself hardly establishes that the property is not being taxed. * * * No matter which attribute of possessory interest in the property is hit-- initial acquisition of ownership, or continued retention-- it is always the nonresident serviceman who is hurt when the tax is levied.
 
 
 14
 See also Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 66, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963); Henneford v. Silas Mason Co., 300 U.S. 577, 581-583, 57 S.Ct. 524, 81 L.Ed. 814 (1937). In addition, as with the use tax, the sales tax is computed as a percentage of the property's value, as approximated by its sales price. These basic characteristics indicate that the sales tax also falls within the definition of a tax 'in respect of * * * personal property.'
 
 
 15
 The state's argument to us makes much of the theoretical distinction between an income tax or a property tax, on the one hand, and a privilege tax, on the other. The point is made that section 514 recognizes this difference and affects only the former type, while a sales or use tax is obviously the latter. Of course, this distinction may be useful for analysis in some instances, but section 514 does not in terms make it.[8] Because a tax 'in respect of' property would appear to be broader than a tax 'on' property, citations to show that a use tax is tax 'on' property[9] are not controlling.
 
 
 16
 The language of section 514, therefore, is helpful to plaintiff United States rather than to Connecticut. However, the state finds support in the statute's silence on the subject of sales and use taxes. It points out that when Congress in 1944 revised section 514 to read essentially as it does today, state sales and use taxation was already widespread. Therefore, argues the state, if Congress had intended to preclude such taxation of nonresident servicemen, it would have said so.
 
 
 17
 An argument based on silence is difficult to deal with, since inferences can be drawn either way; e.h., if Congress had wanted to allow state sales and use taxation, it could have said so in the proviso which permits normal 'trade or business' taxes.[10] The legislative history is not informative on this specific point, for we find no mention of sales or use taxes. However, we do discern there a significant concern for the welfare of the serviceman, see, e.g., H.R.Rep. No. 2198, 77th Cong., 2d Sess. 2 (1942), consistent with the Supreme Court's instruction to su to read the Act 'with an eye friendly to those who dropped their affairs to answer their country's call.' Le Maistre v. Leffers, 333 U.S. 1, 6, 68 S.Ct. 371, 373, 92 L.Ed. 429 (1948). Section 514 was first enacted in 1942 to protect servicemen against the undue burdens of multiple taxation to which movement around the country under military orders might subject them.[11] In 1944, Congress amended the statute to make it absolutely clear that taxation in respect of nonresident servicemen's 'personal' property was impermissible even if not based on the serviceman's residence or domicile.[12] Moreover, even though a contrary interpretation was possible, the Supreme Court later held in Dameron v. Brodhead, 345 U.S. 322, 326, 73 S.Ct. 721, 724, 97 L.Ed. 1041 (1953), that Congress did not restrict the statute's effect to actual incidents of double taxation:
 
 
 18
 In fact, though the evils of potential multiple taxation may have given rise to this provision, Congress appears to have chosen the broader technique of the statute carefully, freeing servicemen from both income and property taxes imposed by any state by virtue of their presence there as a result of military orders. It saved the sole right of taxation to the state of original residence whether or not that state exercised the right. Congress, manifestly, thought that compulsory presence in a state should not alter the benefits and burdens of our system of dual federalism during service with the armed forces.
 
 
 19
 In 1962, Congress felt it necessary to clarify the statute even further. A naval officer from New Jersey, stationed in Arlington, Virginia, had been on sea duty for over a year. While he was so engaged, Arlington County assessed a tax on the personal property that he had left in Virginia with his family. The county claimed that since the officer was no longer in Arlington under military orders, his personal property was not exempt from taxation, even though it could not have been taxed while he was there. The case was brought to the attention of Congress, which added the following sentence to subsection (1) of section 514:
 
 
 20
 Where the owner of personal property is absent from his residence or domicile solely by reason of compliance with military or naval orders, this section applies with respect to personal property, or the use thereof, within any tax jurisdiction other than such place of residence or domicile, regardless of where the owner may be serving in compliance with such orders * * *.
 
 
 21
 The new sentence was broader than the facts required, since it explicitly referred to the 'use' of personal property as an object of the federal exemption, even though the Arlington case did not involve a use tax. As already noted, this added language literally applies to the appeal now before us, whether or not Congress intended to broaden section 514. Plaintiff United States points out that if Congress only intended to clarify the statute, as seems to be the case,[13] then this supports the view that the statute already covered use taxes.[14] Otherwise, the logial conclusion would be that Congress simply made a mistake when it included the phrase 'or the use thereof,' an assumption which ignores the fact that the same phrase had already been in subsection (2) of section 514 for many years.
 
 
 22
 The most recent discussion of legislative intent appears in California v. Buzard, 382 U.S. 386, 86 S.Ct. 478, 15 L.Ed.2d 436 (1966). The Court there considered motor vehicle registration and license fees which had been imposed by California on an Air Force Captain from Washington. The car in question had been purchased in Alabama and brought to California; since it had never been in Washington, there was no duty to register it in that state. The Court construed section 514(2)(b) to mean that an automobile had to be registered in either the home state or the host state. Subsection (2) was added to section 514 in 1944 as part of the clarifying amendments which specifically stated that the exemption of section 514 applied to taxes relating to 'personal' property. See note 12 supra and accompanying text. Subsection (2)(b) provides that the 'taxation' referred to in section 514(1) includes 'licenses, fees, or excises imposed in respect to motor vehicles or the use thereof * * *.' Then a proviso adds:
 
 
 23
 Provided, That the license, fee, or excise required by the State * * * of which the person is a resident or in which he is domiciled has been paid.
 
 
 24
 Thus, the exemption for servicemen from motor vehicle taxes is explicitly stated in section 514(2)(b), and then modified in the proviso, to deal with a specific problem created by the breadth of section 514(1): Whether a serviceman can escape all registration by keeping his car out of his home state.
 
 
 25
 The Court concluded in Buzard that the effect of the proviso to section 514(2) (b) was to narrow the exemption from state taxation granted by section 514(1). Thus, a host state could tax a serviceman's car for registration purposes if his home state had not done so. 382 U.S. at 391-392, 86 S.Ct. 478. However, the Court limited the effect of the proviso to taxes which were necessary to registration. California's license fee of two per cent 'of the market value of the vehicle' was, under state law, not imposed as a tax 'essential to the registration and licensing of the * * * vehicle.' Rather, it served the state's revenue interests and was 'raised to defray the general expenses of government.' Id. at 395-396, 86 S.Ct. at 484. The Court pointed out, id. at 393, 86 S.Ct. at 483, that the license fee[15] there involved did not come within the exception to section 514(1)'s exemption because:
 
 
 26
 The very purpose of 514 in broadly freeing the nonresident serviceman from the obligation to pay property and income taxes was to relieve him of the burden of supporting the governments of the States where he was present solely in compliance with military orders.
 
 
 27
 Consequently, the Court held that the California motor vehicle tax there under consideration was barred by section 514.
 
 
 28
 The language and approach of the Court in Buzard strongly suggest that but for the proviso to section 514(2)(b), the host state could not tax a nonresident serviceman's vehicle at all because motor vehicles are obviously personal property. Although the taxes in the instant case are non-recurring, while those in Buzard appear to have been annual,[16] we think Buzard is broad enough to rule here. Connecticut's sales and use taxes are imposed for general revenue purposes; imposing such taxes on nonresident servicemen improperly places the burden of supporting Connecticut upon their shoulders. In addition, it is significant that the tax in Buzard was explicitly labelled a 'privilege' tax;[17] yet the Court held that the broad language of section 514 barred its application to the Captain.
 
 
 29
 We conclude that the language and the spirit of section 514 call for affirmance of Judge Blumenfeld's decision. Connecticut contended at oral argument that this will cause immense administrative problems in differentiating nonresident servicemen from other customers. We do not think these problems insurmountable, surmountable, or even seriously burdensome. In fact, Connecticut has already exempted other groups from its sales and use taxes, and no ill effect from these exemptions has been brought to our attention. See sections 12-412(a) (the United States, the state or subdivisions), (e) (nonprofit charitable hospitals), (h) (charitable and religious organizations).
 
 
 30
 The judgment below is affirmed.
 
 
 
 [1]
 Lieutenant Stanley D. Schuman, U.S.N., was also a plaintiff below, having brought a class action pursuant to Fed.R.Civ.P. 23 on behalf of himself and all other servicemen similarly situated. The district court dismissed his complaint for lack of jurisdiction, and no appeal has been taken
 
 
 [2]
 Plaintiff also sought an injunction against further collcetions of the taxes; before the decision, however, counsel for both parties agreed that declaratory relief would suffice to secure the state's compliance. The court permitted Connecticut to continue collecting the taxes pending the outcome of the appeal. It has been stipulated that if the district court's decision is ultimately upheld, all taxes improperly collected since June 28, 1964, will be refunded upon proper application
 
 
 [3]
 Schuman at the time of filing the complaint was both a domiciliary and resident of Nebraska; the other personnel listed above had similar connections with their states of origin
 
 
 [4]
 It has been stipulated that Connecticut cannot tax sales to servicemen made by millitary exchanges or commissaries operated by the armed services on military installations. Such sales are exempt under the Buck Act, 4 U.S.C. 107
 
 
 [5]
 Subsection (2) was added to 514 in 1944, as discussed below
 
 
 [6]
 Thus, section 514 also states:
 Provided, That nothing contained in this section shall prevent taxation by any State * * * in respect of personal property used in or arising from a trade or business, if it otherwise has jurisdiction.
 
 
 [7]
 This language was added to 514 in 1962, under circumstances discussed below
 
 
 [8]
 See also the discussion below of California v. Buzard, 382 U.S. 386, 86 S.Ct. 478, 15 L.Ed.2d 436 (1966)
 
 
 [9]
 E.g., Henneford v. Silas Mason Co., 300 U.S. 577, 582, 57 S.Ct. 524, 81 L.Ed. 814 (1937); Connecticut Light & Power Co. v. Walsh, 134 Conn. 295, 57 A.2d 128, 1 A.L.R.2d 453 (1948)
 
 
 [10]
 See note 6 supra
 
 
 [11]
 See S.Rep. No. 1558, 77th Cong., 2d Sess. 11 (1942); H.R.Rep. No. 2198, 77th Cong., 2d Sess. 6 (1942); Hearings on H.R. 7029 Before the Houses Committee on Military Affairs, 77th Cong., 2d Sess. 28 (1942)
 
 
 [12]
 See S.Rep. No. 959, 78th Cong., 2d Sess. 1 (1944); H.R.Rep. No. 1514, 78th Cong., 2d Sess. 2 (1944)
 
 
 [13]
 See S.Rep. No. 2182, 87th Cong., 2d Sess. 1 (1962); H.R.Rep. No. 2126, 87th Cong., 2d Sess. 2 (1962). U.S.Code Congressional and Administrative News, p. 2841
 
 
 [14]
 The case that gave rise to the 1962 amendment was eventually decided in United States v. Arlington County, 326 F.2d 929 (4th Cir. 1964). The court there held that the tax was barred even under the language before amendment
 
 
 [15]
 The facts in Buzard did not require the Court to consider whether California's 'registration fee' of $8.00 was in a different category
 
 
 [16]
 California's Revenue & Taxation Code provides, in part:
 10751. A license fee is hereby imposed for the privilege of operating upon the public highways in this State any vehicle of a type which is subject to registration under the Vehicle Code. 10752. The annual amount of the license fee shall be a sum equal to two (2) percent of the market value of the vehicle as determined by the department.
 
 
 [17]
 See not 16 supra