The **SECOND NATIONAL BANK OF NEW HAVEN**, Executor of the Will of Frederick F. Brewster, late of Hamden, Deceased, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. No. 9435.

United States District Court
D. Connecticut.

March 6, 1969.

Curtiss K. Thompson and John H. Weir, of Thompson, Weir & Barclay, New Haven, Conn., for plaintiff.

Daniel J. Dinan, Atty., Tax Division, Dept. of Justice, Washington, D. C., and Jon O. Newman, U. S. Atty., Hartford, Conn., for defendant.

Ralph Berkley, Asst. Atty. Gen., and Robert J. Hale, State Tax Dept., Hartford, Conn., for State of Connecticut as amicus curiae.

TIMBERS, Chief Judge.

## QUESTION PRESENTED

■ On cross-motions for entry of final judgment in this action, pursuant to 28 U.S.C. § 1346(a)(1), to recover federal estate taxes claimed to have been erroneously assessed and collected, the sole remaining question is whether a decedent's estate may credit against its federal estate tax certain state death taxes paid with respect to property of the decedent even though the property itself was not included in the decedent's federal gross estate for federal estate tax purposes.

The Court holds that this question must be answered in the affirmative: plaintiff is entitled to a credit for taxes it has paid to the State of Connecticut with respect to the John Brewster Trust.

Counsel for the respective parties are directed to settle a judgment accordingly on ten days' notice.

## FACTS

The essential facts necessary to a determination of the narrow question here presented are not in dispute.[1]

By its judgment entered herein on March 26, 1968, this Court granted plaintiff a recovery of $249,680.86 in federal estate taxes and $36,573.12 in assessed interest, for a total of $286,253.98 with interest thereon according to law.

This Court's judgment of March 26, 1968 further directed that it should retain jurisdiction of the case in order to redetermine the refund pending a final determination by the State of Connecticut of the state inheritance and estate taxes. Such judgment recited that retention of jurisdiction was necessitated by the fact that the parties were unable to determine the amount of state taxes to be deducted in determining the marital deduction and the credit allowable for state death taxes.

The recovery of an overpayment of federal estate taxes and interest thereon as granted by this Court was predicated upon a recomputation of the federal estate tax liability of plaintiff's estate made on behalf of defendant by the IRS, dated February 21, 1968.

Since the prior judgment herein, succession taxes due the State of Connecticut from plaintiff's estate have been finally determined and assessed in amount of $950,683.55. Such taxes have been fully paid by plaintiff's estate.

Of the succession taxes thus assessed and paid, the sum of $69,422.85 was assessed with respect to a transfer made by the decedent and effective at his death on September 16, 1958 under a certain indenture of trust dated February 15, 1929 for the benefit of his son, John Brewster (hereinafter, the "Brewster Trust"). This indenture gave John the income for life with the remainder to his sister and brothers or their issue, spouses, or appointees. Absent survival of any of this large class of beneficiaries, the trustee was directed to

" . . . deliver and pay the entire remainder of the trust fund free from the trust herein created to the parties of the first part [the decedent and his wife], or if the parties of the first part shall not then both be living, to their survivor."

Thus, by the express terms of this indenture, the decedent had retained a reversionary interest, albeit one of limited value.

Since the prior judgment herein, estate taxes due the State of Connecticut from plaintiff's estate have been determined and assessed in amount of $150,303.22. Such taxes have been fully paid by plaintiff's estate.

The tax recomputation of February 21, 1968, referred to above, was based on

---

1. For a more complete statement of the facts involved in prior controversies (not here relevant) concerning the amount of federal estate tax due from this estate, see Second National Bank of New Haven v. United States, 222 F.Supp. 446 (D.Conn.1963), aff'd in part, rev'd in part, 351 F.2d 489 (2 Cir. 1965), aff'd, 387 U.S. 456 (1967).

the assumption that the succession taxes attributable to the transfer in trust for the benefit of John Brewster would amount to $107,543.30 and one-third thereof would be chargeable to the widow's one-third share of the residue. Since it now has been determined that the correct amount of succession taxes attributable to the Brewster Trust is only $69,422.85, the widow's share which is tax exempt by reason of the marital deduction is increased and the net taxable estate is correspondingly reduced.

In view of the Court's holding, for the reasons stated below, that plaintiff is entitled to a credit for taxes it has paid to the State of Connecticut with respect to the Brewster Trust, presumably counsel for the respective parties can agree upon the computations necessary to determine the amounts of plaintiff's overpayments of federal estate taxes and interest thereon as of May 28, 1962, and the amount of the final judgment to be entered herein according to law.

## APPLICABLE STATUTES

Under Section 2011(a) of the Internal Revenue Code of 1954 (hereinafter,

IRC), 26 U.S.C. § 2011(a) (1964), an estate may credit against its federal estate tax certain taxes paid to any state "in respect of any property included in the gross estate . . . ." [2] The present dispute turns on the meaning to be given the quoted phrase, and more particularly the term "gross estate". Plaintiff, as well as the Tax Commissioner of the State of Connecticut, relying upon public policy, analytical arguments and legislative history, claim that "gross estate" should be read to mean "gross estate for *state* tax purposes". Defendant, on the other hand, without citation to any authority,[3] flatly asserts that under IRC § 2011(a) a state death tax credit should not be allowed against the federal estate tax where the property taxed by the state and for which the credit is sought has been excluded from the *federal* gross estate for federal estate tax purposes.

The value of the Brewster Trust was not included in decedent's estate for federal tax purposes [4], although it would appear that decedent had retained an interest taxable under IRC § 2033.[5] By virtue of Conn.Gen.Stat. § 12–341 [6], how-

2. IRC § 2011(a):
   "The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent)."

3. In its supplemental brief defendant cites Rabkin and Johnson, Federal Income, Gift and Estate Taxation § 53.09, Brock v. Commissioner, 16 B.T.A. 1358 (1929), and Moore v. Commissioner, 21 B.T.A. 279 (1930), in support of its position. As with the *Morsman* case, discussed *infra*, insofar as these citations are claimed as authority adverse to the clear indications of the legislative history, the Court declines to follow them.

4. See IRC § 2037(a) (2), excluding property where the value of the reversionary interest is less than 5%, as it was in this case. A parallel state exclusion, *infra* note 6, recently enacted by Connecticut,

was not in force at the time taxes were assessed on the Brewster Trust.

5. IRC § 2033:
   "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."

6. Conn.Gen.Stat. § 12–341:
   "The transfers enumerated in section 12–340 shall be taxable if made . . . (d) by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. Such a transfer as last mentioned shall include, among other things, a transfer under which the decedent retained for his life, or for any period not ascertainable without reference to his death, or for a period of such duration as to evidence an intention that he should retain for his life (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person or persons, to designate the person or persons who shall possess or enjoy the property or

ever, the Brewster Trust was taxed by the State of Connecticut. Out of this asymmetrical tax treatment arises the interpretative problem with which the Court presently is confronted. The estate seeks to credit state taxes paid with respect to property of its decedent even though the property itself was not included in his federal gross estate for federal estate tax purposes.[7]

## OPINION

■ The state death tax credit was designed to preserve for states an historic source of revenue without incurring additional expense to their citizens.[8] The credit is ineffective, however, where the 80% statutory maximum has been exceeded, or the estate itself has incurred no federal estate tax.[9] Defendant urges a third area, one wherein the estate is subject to federal estate taxes and the 80% statutory maximum credit has not been exceeded: namely, where the specific res taxed by the state has not been included in the federal gross estate.

In Morsman v. Commissioner, 14 B.T.A. 108, 113 (1928), *rev'd on other grounds,* 44 F.2d 902 (8 Cir. 1930), *rev'd,* 283 U.S. 784 (1931) (per curiam), *order following Supreme Court mandate,* 50 F.2d 1074 (8 Cir. 1931), the Board of Tax Appeals, holding that the trust fund upon which the tax had been paid "did not constitute part of the gross estate *for federal estate tax purposes*" (emphasis added), disallowed a claimed credit for payment of a state transfer tax. This decision is not without ambiguity and, although somewhat contemporaneous in time with the predecessor of IRC § 2011 (a), Section 301(b) of the Revenue Act of 1926, its value as a precedent is undermined by the legislative history of that provision discussed in some detail below. In light of this, insofar as *Morsman* is claimed to support defendant's contentions, the Court declines to follow it.

A literal analysis of IRC § 2011(a) provides few clues to which of the proffered alternative constructions is correct. On the one hand, it is argued by defendant that all state death taxes are imposed upon property included in the state gross estate and that the phrase "in respect of any property included in the gross estate . . ." is redundant if construed to refer to the state gross estate. On the other hand, it is argued by plaintiff with equal force that the specific statutory limitations on the credit in IRC § 2011(b)–(e) negative the contention that any implied limitations on the credit should be derived from the otherwise silent language of IRC § 2011(a).[10]

---

the income therefrom. . . ." The deleted portion describes a 5% exclusion not in effect at the time of Frederick F. Brewster's death.

7. Under IRC § 2033, decedent's interest in the trust property would seem to be a part of his estate for federal tax purposes even though the interest apparently was not reported by plaintiff nor taxed by defendant. Assuming that this absence of reporting and taxation does not affect the inclusion of this interest in decedent's estate under IRC § 2033 as incorporated by IRC § 2011(a), and accepting defendant's contention that the latter provision requires inclusion in the federal gross estate as a prerequisite to the allowance of the credit, plaintiff clearly is entitled to credit taxes paid to Connecticut on the IRC § 2033 interest of decedent. This falls short, however, of resolving the instant controversy since

the bulk of the taxes paid Connecticut on the Brewster Trust are not attributable to the reversionary interest of decedent as defined by IRC § 2033, but were imposed upon the entire transfer itself. Since inclusion within IRC § 2033 would resolve but a minimal facet of the controversy, the Court does not premise its decision thereon.

8. 4 Mertens, The Law of Federal Gift and Estate Taxation § 31.01 (1959).

9. See Advisory Commission on Intergovernmental Relations, Coordination of State and Federal Inheritance, Estate, and Gift Taxes 4 (1961) (hereinafter, "Advisory Commission Report").

10. But see United States v. Sullivan, 398 F.2d 672, 677 (2 Cir. 1968): "An argument based on silence is difficult to deal with, since inferences can be drawn either way."

Rules of statutory construction require recognition of the fact that "[l]egislative words are not inert, [but] derive vitality from the obvious purposes at which they are aimed . . . ." Griffiths v. Commissioner, 308 U.S. 355, 358 (1939).[11] Therefore, IRC § 2011 (a) must be interpreted in light of its legislative history since on its face the language used is subject to alternative constructions. Were the statutory language unambiguous, resort to legislative history would not be appropriate. But where, as here, ambiguity arises from the language itself, such history properly may be utilized to clarify and define the language. See United States v. Blasius, 397 F.2d 203, 205 (2 Cir. 1968); see also In re Miracle Mart, Inc., 396 F.2d 62 (2 Cir. 1968).

Congress manifested a dual intention in the Revenue Act of 1926 when it enacted into law Section 301(b). The fundamental objective was the elimination of dual taxation, as exemplified by the following statements, all of which, except where otherwise noted, were made on the floor of the respective bodies of Congress:

" . . . when we allow up to an 80 per cent deduction in cases where it has actually been paid to the State, instead of violating a sound principle of taxation we give recognition to one, in that we endeavor to prevent the duplication of taxes . . . . The Federal Government, however, recognizes that the States are well within their rights when they provide for a State inheritance tax, and in order to avoid double taxation it is perfectly proper and desirable to allow the taxpayer a credit for the amount which

he has paid to the State up to 80 per cent of the amount of his Federal estate tax." [12]

"The system under which [the federal estate tax] is retained will largely do away with double taxation whereby an estate would pay tax both to the Federal Government and to the State wherein a decedent had his residence." [13]

As a consequence of this credit, "it became a matter of indifference whether a state did or did not impose a tax below this floor. The combined State and Federal liability was in either event the same. The credit enabled any state to divert to its treasury 80 cents of every tax dollar otherwise payable to the Federal Government." [14]

A second, and in part collateral, purpose of the statute—indeed the only reason for the use of a credit as opposed to the total repeal or direct lowering of the rates of the federal estate tax—was the neutralization of Florida's constitutional prohibition against inheritance taxes, which was being used to lure octogenarians and men of wealth to spend their last days in sunshine:

"If you do not [enact the credit], there will be more Floridas in this country. The states will just fall pell-mell over each other repealing their inheritance taxes in order to induce capital to come to them instead of going elsewhere." [15]

"The provision of this bill as passed by the House requiring a refund of 80 per cent of the Federal inheritance taxes to taxpayers in states having a state tax apparently was activated and brought about on account of the action

---

11. See also National Woodwork Manufacturers Association v. NLRB, 386 U.S. 612, 619 (1967):

"It is a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.' Holy Trinity Church v. United States, 143 U.S. 457, 459."

12. 67 Cong.Rec. 674 (1925) (remarks of Representative Black of Texas).

13. 67 Cong.Rec. 695 (1925) (remarks of Representative Treadway).

14. Advisory Commission Report, at 11.

15. 67 Cong.Rec. 3625 (1926) (remarks of Senator Simmons of Florida, paraphrasing the argument of a proponent of the tax credit). See also remarks of Representative Black, supra note 12.

of the State of Florida, acting within its rights, in having adopted a constitutional amendment providing that no inheritance tax should be levied in that state." [16]

It is apparent that there was support for the complete abolition of the federal estate tax,[17] but the indirection of a credit was necessitated by opposition to Florida's tactics which would otherwise lower revenues in states if a direct state inheritance tax were utilized. Absent a purpose to compel Florida to pass an inheritance tax or as a consequence to have its citizens contribute more heavily to the federal government, the credit would have yielded to repeal or lower rates.[18] Use of the credit resulted in an allocation of revenue between two taxing authorities; the total tax burden upon the estate remained constant. In eliminating dual taxation and nullifying the absence of an inheritance tax in Florida, Congress at no time was concerned with making availability of the credit dependent upon the nature of the property taxed by the state. Such dependence, as urged by defendant, was wholly irrelevant to Congressional intent. So long as an estate was being taxed by two authorities, Congress provided a credit (under certain conditions not relevant here) to moderate the total impact upon the estate. To deny plaintiff the credit which it seeks would be tantamount to redrafting IRC § 2011(a). All indications are to the contrary.[19]

## CONCLUSION

The Court concludes that plaintiff is entitled to a credit for the taxes it has paid to the State of Connecticut with respect to the Brewster Trust.

The Clerk accordingly is directed to enter a final judgment to be settled by counsel for the respective parties on ten days notice.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

16. 67 Cong.Rec. 3684 (1926) (remarks of Senator Trammell).

17. See Hearings on H.R. 1 ("An Act to Reduce and Equalize Taxation . . .") Before the Committee on Finance, United States Senate, 69th Cong., 1st Sess. 34 (1926) (remarks of Secretary of the Treasury Mellon): "I think it was desirable to have the federal estate taxes abolished . . ."

18. Under the credit, an estate subject to a federal tax of 100 in State X would pay 80 to State X and 20 to the federal government. In Florida, unless an inheritance tax were enacted, the estate would pay the entire 100 to the federal government.

19. In addition to the remarks already cited, see, e. g., 67 Cong.Rec. 4488 (1926) (remarks of Senator Trammell): "The Bill contains a provision which provides that 80 per cent of the inheritance tax paid to the Federal Government shall be refunded to the taxpayer if he pays a State inheritance tax or estate tax equal to 80 per cent of the Federal tax"; and

67 Cong.Rec. 4429 (1926) (remarks of Representative Mills): "[T]he greater tax the State takes, the less ability the individual estate has to pay the Federal tax.

"This is the basis of the 80 per cent rebate. It is an honest and sincere attempt to base a Federal tax rate on the ability of the individual estates throughout the United States to pay a Federal tax and their ability in turn is dependent on the tax they have to pay the States.

"In addition, it insures throughout the United States uniformity of taxation if you take the really important factor into consideration, that of total taxes combined, State and local."