# 116

ROBERT PENTLAND, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12925. Promulgated July 30, 1948.

*Albert B. Bernstein, Esq.*, for the petitioner.
*Bernard D. Hathcock, Esq.*, for the respondent.

118

## OPINION.

LEECH, *Judge*: The determination of the only issue submitted rests upon whether petitioner was domiciled in Texas during the taxable year 1943. If the answer is in the affirmative, then petitioner was entitled to report his income on a community tax basis. *Poe* v. *Seaborn*, 282 U. S. 101; *Hopkins* v. *Bacon*, 282 U. S. 122. The question

must be determined by the application of rules established for ascertaining one's domicile.

In *Mitchell* v. *United States*, 21 Wall. 350, 353, the Supreme Court said: "A domicile once acquired is presumed to continue until it is shown to have been changed. * * * Until the new one is acquired, the old one remains. * * *"

In *Gilbert* v. *David*, 235 U. S. 561, 569, the rule is amplified in the following language:

[Quoting from "Conflict of Laws" (Story) 7th Ed., § 46, p. 41.] "If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is to be deemed his place of domicile, notwithstanding he may entertain a floating intention to return at some future period." [Quoting from *Price* v. *Price*, 156 Pa. St. 617, 626.] "The requisite animus is the present intention of permanent or indefinite residence in a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely."

Petitioner was a member of the armed forces of the United States. His domicile at the time he volunteered for military duty in April 1942 was in the State of Florida, although the record discloses a discrepancy in this respect. In his affidavit sworn to on May 20, 1943, in support of his motion to quash the substituted service of a summons, he stated that his legal residence and domicile were at Blowing Rock, North Carolina. At the hearing had herein, he testified that Blowing Rock was a summer home, which was occupied by his wife and daughter while he was on duty in Washington, D. C., so as to be near to him. In his petition filed herein petitioner alleges under oath that at the time he entered the military forces he was a resident of Florida. Upon his discharge from military duty in October 1944, petitioner received Government transportation back to Florida under a claim that his residence was in Florida. Furthermore, the principal businesses and social interests were in Florida. For the purposes of determining the question presented, we conclude that petitioner was a resident of Florida at the time of his entry into the military service of the United States.

In Corpus Juris Secundum, vol. 28, "Domicile," § 12, p. 28, it is said:

The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years, and even though he establishes his family where he is stationed. A new domicile may, however, be acquired if both the fact and the intent concur.

Upon petitioner's entry into the military service he was stationed at Washington, D. C. It was determined to distribute a part of the

air command stationed in Washington, D. C., to various air bases located throughout the United States. Petitioner was given the privilege of selecting the air base to which he preferred to be transferred. He expressed a preference to go to the State of Texas, and was transferred to the base near Fort Worth.

In *Wilson* v. *Wilson* (Tex. Civ. App.), 189 S. W. (2d) 212, the Texas court was required to determine the legal residence of a soldier. It there appears that the soldier at the time of his enlistment was a resident of Illinois. He was given a choice of going to Biloxi, Mississippi, or Sheppard Field, Texas. He chose the latter. In the course of its opinion the court laid down some rules relative to the residence of persons in the military service which we find pertinent here. The court there said:

> A review of the law pertaining to the residence of a soldier who is sent to Texas from another state under military orders properly begins with the case of *Gallagher* v. *Gallagher*, Tex. Civ. App., 214 S. W. 516, 518. It is there held that the words "inhabitant," "citizen" and "resident" mean substantially the same thing. In order to be an inhabitant one must acquire a domicile or home, and it must have the stamp of permanency on it. There must not only be an intention to establish a permanent domicile or home, but the intention must be accompanied by some act done in the execution of the intent. A soldier can abandon his domicile of origin and select another, yet, in order to show a new domicile during the term of enlistment, there must be the clearest and most unequivocal proof. * * *
>
> \* \* \* \* \* \* \*
>
> [Quoting from *Gallagher* v. *Gallagher, supra.*] "Ordinarily it is a presumption of law that where a person actually lives is his domicile, such presumption of course being rebuttable; but no such presumption could arise in the case of a soldier in active service, who has no choice of domicile, but must ordinarily cling to his domicile of origin. Ordinarily, an act of removal to a certain location, coupled with the intent to make a permanent residence there, might be sufficient to fix a domicile, but that is because the removal is voluntarily made, which could not occur in the case of a soldier in active service."

To the same effect, see *Commercial Credit Corporation* v. *Smith* (Tex. Sup.), 187 S. W. (2d) 363, 366.

Applying the established principles of law as to domicile to the essentially undisputed facts here, we find a situation which may be briefly summarized as follows: Petitioner, while serving in the military forces of the United States, was detailed for duty at a military air base near Fort Worth, Texas; he rented a house and established his family in the latter city; he opened a checking account, rented a safe deposit vault, where he kept his securities, established credit accounts with local merchants, joined social clubs, made some investments in oil properties, and voted at least once, in an election in 1944 when he became qualified to do so. All of such facts, with the exception of voting, evidence a conduct both natural and consistent with temporary residence. The more so, since petitioner was financially

well off and enjoyed a large annual income. Of course, the self-serving declarations of petitioner that he intended to change his domicile to Forth Worth are to be weighed in the light of all the circumstances.

Petitioner testified that it was his intention to remain in Fort Worth indefinitely. Petitioner's presence in the State of Texas was not voluntary, but was dependent upon the will of his superiors. His stay there was indefinite, since many incalculable factors were involved, i. e., the duration of the war, a possible transfer to another air command, or to foreign service, which petitioner contemplated as shown in his letter to the tax assessor in Florida, or his discharge for medical reasons, which, in fact, did occur in October 1944.

Important here, we think, is the fact that the major source of petitioner's income in 1943 was from his principal business interests in Florida, to wit, his share of the profits from the accounting firm of which he was senior partner, and his salary as chairman of the board of directors of the Margaret Ann Grocery Stores.

The evidence establishes that these payments were not merely made because of the actual services rendered by petitioner, which were substantially reduced by reason of his physical absence, but because of the fact that petitioner was serving in the military forces. It is common knowledge that it was not unusual for business concerns to make such payments to personnel whose absence was due to military service. We think it would be unnatural, however, to assume that such payments would have been continued if petitioner had definitely decided to remain permanently in Fort Worth, Texas. There is no evidence that he had ever informed his business associates that he had established or decided to establish a permanent home in Fort Worth, Texas.

Petitioner belonged to several social clubs in Florida. He did not resign his membership. The reason given was that membership fees were waived in the case of members who were in the military service. Even so, we think that, if petitioner intended to abandon his established domicile in Florida, the natural impulse would have been to so inform his social associates. Other evidence which we think has an important bearing on petitioner's intention is the fact that within two weeks of his discharge from the military service he placed his household goods and personal effects in storage and left for Florida; he claimed and received from the Government the expense of his transportation back to Florida; and, having returned to Florida, he remained there.

Earlier in this opinion we referred to the fact that petitioner, on at least one occasion, voted in the election while living in Fort Worth. Although "voting" is important evidence on the issue of domicile, it

is not decisive if all the circumstances lead to an opposite conclusion. *District of Columbia* v. *Murphy*, 314 U. S. 441, 456.

The intention to establish a new domicile must be bona fide and not merely claimed. Weighing all the circumstances, we are convinced that petitioner never, in fact or in law, abandoned his legal domicile in Florida or established a new one in Texas.

We, therefore, conclude that the respondent's determination that, in the taxable year 1943, petitioner was not entitled to report his income on a community tax basis must be sustained. Certain concessions having been made by the respondent at the hearing,

*Decision will be entered under Rule 50.*