TOM S. KAMIKIDO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kamikido v. Commissioner
Docket No. 5018-78.
United States Tax Court
T.C. Memo 1979-402; 1979 Tax Ct. Memo LEXIS 122; 39 T.C.M. (CCH) 261; T.C.M. (RIA) 79402; September 25, 1979, Filed Tom S. Kamikido, pro se. Alan J. Pinner, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $4,999.46 in petitioner's 1974 Federal income tax. The sole issue presented is whether petitioner was domiciled in Washington, a community property *123 state, during 1974 so that one-half of his earnings would be attributable to his nonresident alien spouse and thus excluded from his gross income. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing his petition herein, petitioner, Tom S. Kamikido, resided in Torrance, Calif.
Petitioner was born in Tacoma, Wash., on May 23, 1929. At the time of petitioner's birth his parents were domiciled in the State of Washington. Petitioner lived with his family and went to school in Washington until 1942. In June 1942, petitioner and his family were required to leave their home in Washington and were placed in a relocation center in Oregon pursuant to Executive Order 9066, 3 C.F.R. 1092 (1938-1943 compilation). [1] After spending three months in this center, petitioner and his family were moved to another relocation center in Wyoming where they remained until their release in May 1945. *124 During his internment in Wyoming, petitioner was granted temporary permits to leave the relocation center on two separate occasions. Petitioner first left on June 21, 1944, and went to visit his sister in Spokane, Wash., until August 30, 1944. Petitioner's sister had moved to Washington in 1943. She is presently residing at East 904-9th Avenue in Spokane. in May 1945, when petitioner was 15 years old, he moved with his father and another sister to Ontario, Ore., where his father established a domicile. Petitioner's father was domiciled in Oregon until his death in September 1954. Petitioner, however, lived with his father in Oregon only until October 1946. At that time he enlisted in the United States Army Air Corps, which later became known as the United States Air Force. Petitioner remained in the Air Force until 1967. Although petitioner was often stationed overseas, during the years 1949, 1951, 1956, and 1962 petitioner made visits to his sister living in Spokane. On February 4, 1964, while stationed in Japan, petitioner married Yukiko Kamikido, a Japanese citizen, in Japan. On April 2, 1967, petitioner, wo was still stationed in Japan, filed an application for *125 employment with the Federal Aviation Administration (F.A.A.). On this application he claimed that his legal or voting residence was Oregon. Petitioner was subsequently discharged from the Air Force on April 30, 1967. Although the United States was obligated to return petitioner to Oregon, his residence at the time he entered the Army, petitioner elected to be discharged in Japan. After his discharge, petitioner was hired in Japan by the F.A.A. in June 1967. Petitioner worked continuously for the F.A.A. in Japan from the time he was hired in June 1967 until December 1976. During the time petitioner worked for the F.A.A., he lived with his wife in Japan. Petitioner had a savings account at his credit union in Japan and he had a checking account with a Japanese branch of the Chase Manhattan Bank. Petitioner was also a member of a Masonic Lodge in Japan. Petitioner was registered to vote in Oregon during 1968 and 1969, even though he was living and working in Japan during these years. In early 1970, petitioner purchased a small piece of real property in Ito, Japan, upon which he intended to build a summer home. Petitioner, however, owned no real property in Washington. *126 In September 1970, petitioner and his wife returned to the United States from Japan on vacation and spent four days in Spokane visiting petitioner's sister. During this visit, petitioner registered to vote in Washington. On the voter registration card, petitioner gave as his address his sister's address in Spokane--East 904-9th Avenue. Also during this visit to Spokane, petitioner voted in person in the 1970 elections. Thereafter, while living in Japan, petitioner voted in the 1972 and 1974 elections in Washington by absentee ballot. [2]
In October 1972, petitioner again visited his sister in Spokane while on leave from his job in Japan. On another visit to the United States in October, 1974, petitioner opened a checking account at the Seattle National Bank in Seattle, Wash. Since checks drawn *127 on petitioner's bank account in Japan were not honored in the United States, petitioner opened the bank account in Seattle so he could more easily obtain funds while visiting the United States. Petitioner testified that on his various visits to his sister in Spokane he had only a future intent to move himself and his wife to Washington and that his plans to move to Washington were conditioned on his ability to find suitable employment in the state. Yukiko Kamikido, petitioner's wife, was a citizen and resident of Japan in 1974. She filed with the Internal Revenue Service Form 1040-NR for the taxable year 1974, on which she reported one-half of petitioner's gross income. On this form she claimed a refund for one-half of the tax with-held from petitioner during 1974. On his separate 1974 Federal income tax return, petitioner excluded one-half of his gross income based upon the claim that he was domiciled in Washington, a community property state, and therefore he was entitled to split his income with his nonresident alien spouse. Respondent in his statutory notice disallowed petitioner's exclusion of one-half of his gross income asserting that petitioner was not domiciled in *128 a community property jurisdiction during 1974. OPINION The narrow issue as framed by the parties is whether petitioner was domiciled in Washington, a community property state, during 1974 and therefore entitled to exclude one-half of his gross income from his separate return because such portion was attributable to his nonresident alien spouse. It is well settled that the law of the state in which the earner of income is domiciled is the appropriate law to be utilized in determining whether such income is community property. Lacey v. Commissioner,41 T.C. 329, 337 (1963); Owens v. Commissioner,26 T.C. 77, 88 (1956). Washington is a community property state. Wash.Rev. Code, sec. 26.16.030 (1976). [3] Under Washington law, each spouse has the right to one-half of all community income. Poe v. Seaborn,282 U.S. 101, 111 (1930); In re Towey's Estate,22 Wash. 2d 212, 155 P.2d 273, 275 (1945). Hence, if petitioner was domiciled in Washington during 1974, then one-half of his gross income would be attributable to his nonresident alien spouse. [4]
*129 There are three primary categories of domicile: domicile of origin, domicile by operation of law, and domicile by choice. See Leflar, American Conflicts Law, secs. 10, 12 (3d ed. 1977). At birth a child takes the domicile of his father. This is known as domicile of origin. Sivalls v. United States,205 F.2d 444, 446 (5th Cir. 1953), cert. denied 346 U.S. 898 (1953). A child continues to have the domicile of father until he reaches the age of majority. Sivalls v. Unitd States,supra; In re Estate of Moore,68 Wash. 2d 792, 415 P.2d 653, 656 (1966). Thus, when a father changes his domicile, a minor child acquires the father's new domicile by operation of law. Sivalls v. United States,supra; In re Estate of Moore,supra.
Upon reaching the age of majority, any individual may thereafter choose his own domicile. [5]Sivalls v. United States,supra; Sasse v. Sasse,41 Wash. 2d 363, 249 P.2d 380, 381 (1952). There are two elements necessary to establish a domicile by choice: (1) residence in fact, and (2) the present intent to make the *130 residence one's home. Texas v. Florida,306 U.S. 398, 424 (1939); Whitmore v. Commissioner,25 T.C. 293, 297 (1955); Sasse v. Sasse,supra at 382. If these two elements do not coexist, a domicile by choice cannot be established. Sivalls v. United States,supra; Myers v. Commissioner,11 T.C. 447, 463 (1948); Sasse v. Sasse,supra.In addition, the intent to establish a domicile in a new location at some future date does not constitute the intent necessary to establish a domicile of choice. Sivalls v. United States,supra.Furthermore, a domicile once established continues until it is superseded by a new domicile. Myers v. Commissioner,supra; Sasse v. Sasse,supra.Finally, as a general rule, a soldier's domicile remains unchanged when military service takes him away from such domicile. See Dameron v. Brodhead,345 U.S. 322, 324 (1953); Pentland, Jr. v. Commissioner,11 T.C. 116, 119 (1948). See also Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. sec. 574 *131 (1976). The determination of an individual's domicile is primarily a question fo fact. Niki v. United States,484 F.2d 95 (9th Cir. 1973); Sivalls v. United States,supra. Factors that courts have considered in determining the location of an individual's domicile include the following: place of birth, residence, place of employment, location of family, place where voting rights are exercised, location of property owned as well as other assets and investments, and the location of religious, fraternal, and social organizations with which there is affiliation. District of Columbia v. Murphy,314 U.S. 441, 456-457 (1941); Taira v. Commissioner,51 T.C. 662, 667-668 (1969). Statements of intention made by the individual are also to be considered but are given slight weight when such statements conflict with the individual's actions. Texas v. Florida,supra at 425. *132 In the present case, since petitioner's father was domiciled in Washington when petitioner was born, it is clear that petitioner's domicile of origin was Washington. However, when petitioner's father changed his domicile to Oregon in May 1945, petitioner's domicile became Oregon by operation of law because petitioner was only fifteen years old at the time. Thus, when petitioner enlisted in the United States Army Air Corps in October 1946, his domicile was Oregon. Since as a general rule a soldier's domicile is not changed as a result of his military service, upon petitioner's discharge from the United States Air Force in 1967, his domicile remained in Oregon until he established a new domicile elsewhere. Petitioner maintains that while visiting his sister in Spokane during 1970 he reestablished his domicile in Washington. Thus, petitioner contends that he was domiciled in a community property state during 1974 and, therefore, entitled to exclude one-half of is 1974 income from his separate return because such portion was attributable to his nonresident alien spouse. [6] Respondent, on the other hand, takes the position that petitioner's domicile during 1974 was Oregon or Japan. *133 Respondent argues that since neither Oregon or Japan is a community property jurisdiction, petitioner is no entitled to exclude any portion of his 1974 income from his separate return. The parties do not dispute that if we find that petitioner was not domiciled in Washington, then petitioner is taxable on the full amount of his income for 1974. Taking into consideration all the facts and circumstances, we conclude that petitioner was not domiciled in Washington during 1974. Although petitioner claims to have reestablished his domicile in Washington during 1970, the two elements necessary to establish a domicile by choice, residence in fact and present intent to make the residence one's home, are lacking here. From the time petitioner was discharged from the Air Force *134 in April 1967, until the close of 1974, petitioner lived in Japan with his wife. Ths, it is clear that petitioner's "residence in fact" during 1974 was Japan, not Washington. In addition, we do not believe that petitioner had the present intent to establish a domicile in Washington during 1970 or anytime thereafter prior to the close of 1974. If anything, this record reflects actions on petitioner's part to establish a domicile in Japan, not Washington. While stationed in Japan with the Air Force, petitioner married a Japanese citizen and upon his discharge from th Air Force in 1967 he continued to live in Japan with his wife. Also after his discharge in 1967, petitioner obtained employment with the F.A.A. in Japan. He worked continuously for the F.A.A. in Japan from the time he was hired in June 1967, until December 1976. Petitioner had both a savings and checking account in Japan and in 1970 he purchased a small piece of real property in Ito, Japan, upon which he intended to build a summer home. Furthermore, petitioner was a member of a Masonic Lodge in Japan. Finally, petitioner testified that on his various visits to his sister in Spokane he had only a future intent *135 to move himself and his wife to Washington and that his plans to move to Washington were conditioned on his ability to find suitable employment in the state. Although petitioner voted in the 1970 elections in Washington in person and by absentee ballot in the 1972 and 1974 elections and opened a bank account in Seattle in October 1974, these actions alone are not sufficient to establish petitioner's domicile in Washington. See District of Columbia v. Murphy,supra at 456; Taira v. Commissioner,supra at 667. Since we have found that during 1974 petitioner was not domiciled in Washington, that state's community property laws are not applicable to petitioner and his spouse. Accordintly, we hold that petitioner is taxable on the full amount of his gross income for 1974. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Executive Order 9066, 3 C.F.R. 1092↩ (1938-1943 compilation), issued on February 19, 1942, authorized the creation of relocation centers and the placement in these centers of all persons who posed a threat to the United States defense during war.
2. In a letter dated May 28, 1975, the Deputy Auditor of Spokane County, Wash., notified petitioner that he was not a registered voter in Spokane, Wash., prior to May 28, 1975.& He was, however, allowed to vote in the 1972 and 1974 elections under authority of the Washington election laws pertaining to absentee voters. See Wash. Rev. Code sec. 29.39.010, etseq.↩ (1976).
3. There are only eight states with community property systems: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington. See DeFuniak & Vaughn, Principles of Community Property 1 (2d ed. 1971). ↩
4. As a nonresident alien, petitioner's spouse was not subject to Federal income tax on the income that petitioner earned in Japan. See secs. 862(a)(3), 871, and 872(a) I.R.C. 1954↩, as amended.
5. Prior to 1971 the age of majority in Washington was 21 years. Wash. Rev. Code sec. 26.28.010 (1956). In 1971 the age of majority was reduced to 18 years in Washington. Wash. Rev. Code sec. 26.28.010↩ (1974).
6. Petitioner also argues that under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. sec. 574 (1976)↩, he did not become domiciled in Japan while stationed there in the Air Force. This argument, however, is irrelevant because the question presented here is whether petitioner, after being discharged from th Air Force in 1967, established his domicile in Washington.